UNITED STATES of America ex rel.
Paul K. SEARCY,
Petitioner-Appellee,

v.

Jim GREER, Warden,
Respondent-Appellant.

No. 84–2997.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1985.

Decided July 26, 1985.

Jack Donatelli, Office of Illinois Atty. Gen., Chicago, Ill., for petitioner-appellee.

Howard S. Suskin, Jenner & Block, Chicago, Ill., for respondent-appellant.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and SWYGERT, Senior Judge.

BAUER, Circuit Judge.

Paul Searcy was convicted of rape, deviate sexual assault, armed violence, and home invasion by a jury in an Illinois state court for an attack which occurred in Chicago, Illinois, on July 29, 1979, and was sentenced to four concurrent eighteen-year sentences. Searcy's conviction was affirmed by the Illinois Appellate Court. Searcy's original petition for a writ of habeas corpus was dismissed without prejudice by the district court because he had failed to exhaust his state court remedies by not seeking leave to appeal to the Illinois Supreme Court. The Illinois Supreme Court denied Searcy leave to appeal and he renewed his petition in the district court raising two claims.[1] First, Searcy asserted

1. In addition to the two claims discussed in this case, Searcy also claimed that he had the ineffective assistance of counsel in the Illinois trial courts. The district court held that at the time

that he was denied a fair trial because evidence of an unrelated crime was erroneously admitted at his trial. Second, Searcy maintained that he was denied a fair trial because the trial court refused to grant him a continuance to obtain certain alibi witnesses. On the basis of both claims, the district court granted the petition. We now reverse.

## I. FACTS

Fannie Lee Hardin testified in the state trial that on July 29, 1979, she was living in a first floor apartment in Chicago with her two-year-old son. Her husband was away from home on duty in the Air Force. At about 4:00 or 4:30 a.m. her son, who was asleep in her bedroom, began to whine. She awoke to discover a man picking her son out of his bed and pointing a gun at the child's head. She could see the man because there was light coming from a flashlight on top of the dresser about a foot from her bed and from a building light located outside her bedroom window. The man, whom she later identified as defendant, told her to move to the foot of the bed or he would kill her son.

The assailant put the child in a rocking chair and told her to raise her gown. He held the gun in his pocket, grabbed her hair and told her to open her mouth. He forced her to perform oral sex for about a minute, and then pushed her back on the bed and had intercourse with her for a couple of minutes. She did not know if the man ejaculated. While this was occurring the man threatened to kill the crying child unless she could quiet him. The assailant asked her where her husband was but she did not answer. He then had intercourse with her a second time for about a minute and a third time for a few seconds. He did not ejaculate either time. She heard a bump or knock in the living room and the assailant told her to get on the floor and put her head down. When she reached for the rocking chair to get her son the assail-

ant hit her with the back of his hand. She nevertheless grabbed her son and put her head on the floor. The man told her to count to 100 and he left the apartment. The entire incident lasted 15 to 20 minutes.

After she counted to six she got up, telephoned her mother, and brushed her teeth. She went into the living room and noticed the window was up and the curtains thrown apart. She went into the kitchen and discovered that her purse, containing about $150, a radio, calculator, and alarm clock, was missing and the kitchen door was open. Her mother arrived about five minutes after the phone call, and a few minutes later the police arrived. She was crying and nervous and complied with the police officers' request to go to the hospital. After remaining at the hospital for several hours she went to her mother's home.

On August 14 or 15, 1979, the two police officers showed her six or seven photographs of black males. She recognized a man in one of the photos as the man who raped and assaulted her. The photograph was of Searcy. On August 15 she viewed a lineup at police headquarters. At trial she was shown a color photograph of the lineup and she marked an "X" and her initials over Searcy's head. She then identified Searcy sitting in the courtroom as her assailant. Both prior to trial and at the conclusion of her cross-examination, defense counsel requested the six or seven photographs which were originally shown to her on August 14 or 15. After being informed that the photos had not been inventoried and could not be produced, defense counsel moved for a mistrial. The trial judge denied the motion but gave defense counsel the option of recalling complainant for further cross-examination or to have the court inform the jury to disregard her testimony regarding those photographs. Defense counsel opted for the latter alternative. Her mother and a police officer testified

of the second filing of this petition, Searcy had not exhausted his adequacy of counsel claims in the state courts. That finding is not appealed.

for the state and corroborated her testimony.

During the trial, the state called three witnesses to testify regarding an attempted burglary that occurred on July 30, 1979, one day after Hardin was attacked and only a block and a half from her apartment. Over the defendant's objection, and without an evidentiary hearing, the trial court allowed admission of the evidence as valid to show *modus operandi*.

Joyce Christmas testified that at about 3:45 a.m., she was awakened by a noise under her bedroom window. She looked out her first floor window, which was about six feet above the ground, and saw a man balanced on a sun porch while holding the corner of the building. The man jumped down after she looked at him from a distance of only a few inches. A light was attached to the building near where the man was standing. The window, which was covered with drapes and a shade, was cracked open and the screen shut when she went to bed. When she looked out the window after first hearing the noise the screen was pulled up. She pulled the screen down and went into the kitchen. When she returned to the bedroom the screen had been pulled up again. She looked out the window and saw the same man standing on the sidewalk. She later identified that man as Searcy.

Brenda Williams, who lived on the first floor of the building next to Mrs. Christmas's, testified that she also was awakened at about 3:45 a.m. on July 30, 1979. She looked out her front room window and saw defendant about ten steps away. Defendant took off his pants and underwear, left them on the ground, and climbed the bricks of the building next door attempting to get into Mrs. Christmas's window. She saw him lift Mrs. Christmas's screen. At this time, Brenda Williams was about ten to fifteen feet from the man.

Chicago police officer Don Williams testified that at about 3:45 a.m. on July 30, 1979, he responded to a call from a residence in the neighborhood to investigate a burglary in progress. He talked to two people and received a description of the man they had seen. He then drove his squad car around the area. While driving near Hardin's apartment he saw defendant, who fit the description given by Christmas and Williams. Defendant was cooperative and agreed to accompany the police to the location of the attempted robbery. When they drove up with defendant in the back seat, Christmas and Williams said defendant was the man they had seen outside Christmas's window.

The Illinois Appellate Court held that it was error for the trial court to admit the evidence regarding Searcy's behavior on July 30 as evidence of *modus operandi*. The Illinois Appellate Court held that although both crimes were committed in the same neighborhood at approximately the same time in the early morning only one day apart, these facts were not sufficiently distinctive to amount to a *modus operandi*. The court went on to hold, however, that it considered the evidence harmless beyond a reasonable doubt in view of Hardin's positive identification and the strength of the state's case against Searcy.

The district court issued the writ of habeas corpus in this case in part because it determined that the evidence of the events of July 30 could not be harmless beyond a reasonable doubt. The district court disagreed with the state appellate court's conclusion that the admission of the second offense was harmless error and concluded that this testimony "was no doubt prejudicial to petitioner." The district court granted the writ and the Warden appealed.

## II. ADMISSION OF OTHER CRIME EVIDENCE

The Warden does not dispute in this appeal the Illinois Appellate Court's conclusion that the other crimes testimony introduced during Searcy's trial was inadmissible. The dispute in this case is whether that error rendered Searcy's trial fundamentally unfair and thus an error cognizable in a federal habeas corpus proceeding. The Illinois Appellate Court held that the error of introducing the evidence was

harmless; the district court found that the inadmissible evidence was "no doubt prejudicial," and therefore not harmless.

Trial rules regarding the admissibility of evidence in a state criminal trial are matters of state law. Violations of state evidentiary laws generally do not form the basis upon which federal habeas corpus relief can be granted. A habeas proceeding concerns only whether federal constitutional rights were infringed. *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *United States ex rel. DiGiacomo v. Franzen,* 680 F.2d 515, 517 (7th Cir.1982) (per curiam). Violations of state evidentiary rules, therefore, "may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Brinlee v. Crisp,* 608 F.2d 839, 850 (10th Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980).

The other crimes evidence in this case did not create a fundamentally unfair trial. Hardin observed her assailant for fifteen to twenty minutes, in dim but nonetheless adequate light. Although the petitioner contests the reliability and persuasiveness of this testimony, we believe that the record adequately supports the correctness of the Illinois Appellate Court's determination that her testimony was reliable and convincing. Searcy argues in his brief that the district court found this evidence unreliable and unconvincing. We do not think that it is clear that this is the district court's conclusion. To the extent that this is the district court's holding, however, we find it incorrect. In a federal habeas action, state fact determinations are presumed correct unless that determination "is not fairly supported by the record." 28 U.S.C. § 2254(d)(8). The state's fact determinations in this case, notwithstanding the district court's musings to the contrary, are fairly supported by the record.

Several courts have held that the introduction of improper evidence of other crimes will not support a petition for habeas corpus. *See, e.g., Cramer v. Fahner,* 683 F.2d 1376, 1383 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982); *United States* ex rel. *DiGiacomo v. Franzen,* 680 F.2d 515, 517; *Brinlee v. Crisp,* 608 F.2d 839, 850; *Myers v. Rhay,* 577 F.2d 504, 512 (9th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978); *Corpus v. Estelle,* 571 F.2d 1378, 1381 (5th Cir.), *rehearing denied,* 575 F.2d 881, *cert. denied,* 439 U.S. 957, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978). *Accord Wallace v. Lockhart,* 701 F.2d 719, 724 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983) (improper admission of dental records).

In *Cramer v. Fahner,* this circuit found that the admission of evidence in the state trial regarding petitioner's marijuana use, adultery, professional reputation for misconduct, and murder solicitations was not a sufficient ground for habeas corpus relief. In *Cramer,* this court recognized the well-settled principle that "[i]t is not the role of a federal habeas court to correct state-court errors. . . . Unless the claimed error amounted to a fundamental defect so great that it inherently resulted in a complete miscarriage of justice, the conviction should stand." 683 F.2d at 1385.

Similarly, in *Corpus v. Estelle,* the Fifth Circuit found that the other crimes evidence admitted in the state trial did not result in a fundamentally unfair trial. In *Corpus,* the defendant was on trial for a rape in which he had posed as a gas company employee and had gained admission to the victim's home under the ruse of checking her household appliances for gas leaks. During the trial, two other women testified that within two weeks before the rape, the defendant unsuccessfully had attempted the same ploy with them. In denying relief, the Fifth Circuit found that the defendant's trial was not fundamentally unfair. In *Corpus,* the state appellate court found the admitted evidence harmless without deciding its admissibility, but this difference is not critical. The underlying principle is the same: absent fundamental unfairness, the federal courts will not correct state evidentiary errors.

Moreover, as the Supreme Court recognized in a different context in a habeas corpus action, "the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system," than the federal courts require in the federal system. *Smith v. Phillips*, 455 U.S. 209, 218, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). In this case, the error which the Illinois courts found has not been reversible error in all federal cases we have found with facts similar to the present case. For example, in *United States v. Ezzell*, 644 F.2d 1304 (9th Cir.1981), the court held that other crimes evidence admitted at trial to show identity and a common scheme or plan was found inadmissible but harmless. Ezzell was being tried for robbing a Tacoma, Washington, federal savings and loan association. The trial court allowed the government to introduce defendant's own testimony from an earlier trial in which he admitted robbing a Spokane, Washington, bank eleven days after the Tacoma robbery and in which he described how he accomplished the robbery. The Ninth Circuit found that the evidence was incorrectly admitted because "[t]he points of similarity between the Tacoma and Spokane robberies were ones which are so common to most bank robberies as to be entirely unhelpful." *Id.* at 1306. The court found the admission harmless, however, on the strength of the other evidence, chiefly the identification testimony. *Id.* Although the identification testimony in *Ezzell* involved three eyewitnesses and photos from surveillance cameras in the savings and loan, the Illinois Appellate Court in Searcy's case found Hardin's identification of him reliable and persuasive. This finding cannot be rejected in this habeas corpus proceeding unless it is not fairly supported by the record. 28 U.S.C. 2254(d)(8). Unlike the district court, as we have previously explained, we believe that the state court's finding that Hardin's identification of Searcy was reliable and persuasive is fairly supported by the record.

Searcy also argues that because the respondent has failed to show that the inadmissible testimony was harmless beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), requires us to affirm the grant of habeas corpus relief. We disagree with this application of *Chapman*. *Chapman* involved a state trial in which the prosecution made comments upon a defendant's failure to testify at trial. The Court reversed the defendants' convictions. The California Supreme Court admitted that the defendants were denied a federal constitutional right but nonetheless found the error harmless.

The United States Supreme Court began its analysis in *Chapman* by recognizing that no *per se* rule could apply to hold any violation of a federal constitutional right harmful. Underlying this analysis is the threshold requirement that the *Chapman* harmless error rule is applicable only to violations of federal constitutional rights. Violations of state evidentiary rules result in a federal constitutional violation only when the resultant trial is fundamentally unfair, which we have not found this trial to be, and then the *Chapman* harmless error is inapplicable. We thus find no error of constitutional dimension in the admission of the other crimes evidence in this case sufficient to support a grant of petitioner's writ of habeas corpus.

## III. DENIALS OF CONTINUANCES

Searcy's second claim of error is that the trial court denied him due process when, at three different times during his trial, it refused to grant him continuances in order for him to secure alibi witnesses. At the end of the first day of the state's case, defense counsel reported to the court that Searcy's stepbrother, James Johnson, whom he was allegedly with on the night of the rape, had been required to return home to Minneapolis because his business was failing. Defense counsel explained that the stepbrother already had waited in Chicago for two months while the case was on trial call. In order to determine when to recall the stepbrother to Chicago to testify as an alibi witness, defense counsel in-

quired as to when the state intended to rest its case. The court responded that "the State intends to close tomorrow morning and we intend for the defense to be on in the afternoon and conclude the case." Defense counsel expressed doubt as to whether the stepbrother could return from Minneapolis on a day's notice, but the court refused to grant a continuance. Defense counsel renewed her motion for a continuance on the following morning, but the court again rejected it.

Defense counsel also sought a continuance for a second alibi witness, Marcus Williams, whom Searcy allegedly was with on the early morning of July 30, 1979. Defense counsel explained that until the day before she moved for a continuance she had not anticipated that Williams would be needed as an alibi witness because she had believed that evidence of the attempted burglary was inadmissible. The court responded that defense counsel "never should have assumed" that the evidence would be excluded inasmuch as defense counsel "had no legal basis for the objection." The court then ordered defense counsel to proceed. Defense counsel protested that without her witnesses she could not proceed and could not rest her case. When the court again ordered defense counsel to proceed or to rest, the defense rested without calling either alibi witness.

On appeal, the Illinois Appellate Court addressed Searcy's claim regarding the denial of continuances. The court stated that "while the testimony of the defense witnesses might conceivably have been material, the record clearly shows that defense counsel was less than diligent in the preparation of the case." The court concluded that "[i]n view of the lack of diligence exhibited by the defense counsel in obtaining these witnesses ... there was no abuse of discretion in denying defendant's motions for continuance."

■ Searcy claims that under *People v. Timms*, 59 Ill.App.3d 129, 17 Ill.Dec. 37, 375 N.E.2d 1321 (1978), the denial of the continuances was reversible error. In *Timms*, the Illinois Appellate Court held that a state trial court committed reversible error in not granting a defendant's request for a continuance to obtain the testimony of his father and brother concerning his alibi defense. The request in *Timms* was made on the second day of trial, when defense counsel reported to the court that he had just learned that the witnesses could not appear that day because the father's car had broken down and the brother had been unable to leave his job. Reversing defendant's conviction, the Illinois Appellate Court emphasized the materiality of these witnesses inasmuch as their "testimony ... was directly in support of defendant's only defense at trial, that of alibi." 17 Ill.Dec. at 42, 375 N.E.2d at 1326. The Illinois Appellate Court on Searcy's appeal distinguished *Timms* on the grounds that the failure in *Timms* was not the result of any lack of diligence by the defense counsel. The trial court in this case specifically found that the failure of Johnson and Williams to appear was the result of Searcy's attorney's lack of diligence. Regardless of whether the Illinois Appellate Court in this case correctly applied *Timms*, the alleged error there was one of state evidentiary law, which is not, as we discussed above, cognizable under federal habeas corpus unless it can be shown that the error caused the trial to be fundamentally unfair.

■ Searcy nonetheless argues that the failure to grant the continuances resulted in the deprivation of due process under the federal constitution. The right of a defendant to present witnesses in his defense is fundamental under the United States Constitution. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Continuances in the federal courts, however, are discretionary with the district court.

The matter of the continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.... The answer must be

found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964) (citations omitted).

■ Only an abuse of that discretion has been held to violate one's right to due process and result in a fundamentally unfair trial. *United States v. Rodgers,* 755 F.2d 533, 539 (7th Cir.1985). In the federal courts, the determination of whether the denial of a continuance based on the unavailability of witnesses amounts to an abuse of discretion requires the consideration of four factors: (1) whether due diligence has been exercised to obtain the attendance of the witnesses; (2) whether substantial favorable evidence would be tendered by the witness; (3) whether the witness is available and willing to testify; and (4) whether the denial of the continuance would materially prejudice the defendant. *United States v. Walker,* 621 F.2d 163, 168 (5th Cir.1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981).

■ We think that on the circumstances of this case, the district court incorrectly concluded that the Illinois trial court denied Searcy due process when it denied him the continuances. Searcy's attorney had ample notice that the alibi witnesses would be required at trial. It is not enough in the case of Johnson to argue that a witness had been waiting to testify during the entire time that the case was on the court's call list and decided two days before he was actually needed for testifying that his business in Minnesota needed him. In few cases do witnesses need to be physically available to testify while the case is on active call on the court's docket. Generally a defendant has at least one day's advance notice during the time that the jury is selected and the state is presenting its case to ready himself for the actual presentation of testimony. Here Searcy's attorney was notified one week prior to trial that the case would be tried at the conclusion of the

trial then in progress. We believe therefore that the Illinois trial court properly concluded that Johnson's absence was due to a lack of diligent preparation of the case for trial.

■ Nor do we believe that in the case of Williams it is a proper excuse to argue that the defendant hoped that the other crimes evidence would be excluded and that no alibi witnesses would be needed regarding Searcy's whereabouts on July 30, 1979. We believe that, as the Illinois trial court concluded, due diligence at least requires that counsel prepare for the possibility that the trial court will incorrectly admit evidence which was at least arguably admissible.

While Searcy's defense may have been strengthened by the additional evidence had the trial court granted him the continuances to secure the additional witnesses, the denials of the continuances did not prevent him from putting on his defense or from attacking the strength of the state's case. Moreover, the defendant, through his attorney, is not without fault in the unavailability of the witnesses on the days when they were needed to assist in his defense. *Cf. Shirley v. North Carolina,* 528 F.2d 819 (4th Cir.1975) (abuse of discretion to deny continuance where unavailability of witness is beyond defendant's control).

Moreover, Searcy wanted his half-brother James Johnson to give evidence of his alibi. But the alibi was already in evidence. Searcy himself had taken the stand and testified that on the night of the occurrence he was home in bed, in the apartment he shared with his mother and half-brother. Then, Mrs. Searcy, his mother, followed him on the stand and gave the same testimony. Searcy's own words were corroborated by his mother. Moreover, he told the jury from the stand that his half-brother was not available to testify because he was in Minneapolis. Thus, he was not denied his defense when the judge refused to hold up the trial so that Johnson could be available days or perhaps weeks later, since the evidence he would provide was cumulative.

Finally, Searcy wanted to offer testimony from Marcus Williams to rebut the evidence of other crimes. Searcy, however, had already rebutted this evidence with his own testimony. He testified on the stand that on July 30, during the time of the alleged attempted burglary, he was with his friend, Marcus. Moreover, it must be remembered that William's testimony would go only to a collateral issue. The evidence of attempt burglary was not admitted to show guilt but only identity, presence, intent, motive, or design. The jury received full instruction regarding the proper use of the July 30 attempted burglary evidence. Williams's testimony would rebut only evidence already rebutted by Searcy and admitted only for "the limited purpose for which it was received."

We do not believe, therefore, that any constitutional error occurred because of the denials of the continuances by the state court. Several federal cases have held on facts comparable to the present case that no abuse of discretion occurs when a defendant's motion for a continuance is not made until the trial has begun and after the defendant has known that the witness was needed for trial. *See, e.g., Walker,* 621 F.2d 163; *United States v. Pollack,* 534 F.2d 964 (D.C.Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976); *United States v. Harris,* 436 F.2d 775 (9th Cir.1970).

Having found no errors in the trial court which are sufficient to justify habeas corpus relief, we reverse the decision of the district court.

REVERSED.