872 F.2d 420
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Marvin JACOBS, Sr., Defendant-Appellant.
 No. 88-5608.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 10, 1989.
Decided March 15, 1989.
 
 James Lee Knight (Rightsell, Mclaughlin & Knight on brief) for appellant.
 Paul Alexander Weinman, Assistant United States Attorney (Robert H. Edmunds, Jr., United States Attorney on brief) for appellee.
 Before K.K. HALL, MURNAGHAN, and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert Marvin Jacobs, Sr., tried and convicted of possession and distribution of counterfeit money, alleges the trial judge abused his discretion and committed reversible error by denying Jacobs' motion to continue the trial based on the unavailability of a witness. Jacobs had previously been granted a writ of habeas corpus ad testificandum for the presence of his convict son, who had inexplicably been transferred to a federal prison in another state one week before trial. The trial judge ruled that Jacobs' motion, made on the first day of trial, was untimely, and that the nature of the son's potential testimony and statements by the son's counsel, indicating the son would invoke the Fifth Amendment, rendered his presence immaterial. Agreeing with the trial judge, we affirm.
 
 I.
 
 2
 Jacobs was indicted on January 25, 1988, by a federal grand jury for the Middle District of North Carolina. The two-count indictment charged him with violations of federal counterfeiting laws, 18 U.S.C. Secs. 472 and 473. Both charges were alleged to have occurred on August 15, 1987.
 
 
 3
 On March 15, 1988, Jacobs' counsel filed a petition for a writ of habeas corpus ad testificandum for his son, Robert Marvin Jacobs, Jr., a federal prisoner, to appear at Jacobs' trial on March 28, 1988. The writ was issued on March 21 for Jacobs, Jr. to be produced on March 28. On March 28, 1988, the Government filed a motion to continue the trial until the April term of the court. An order granting the Government's motion was entered the next day. No further petition was made for another writ for Jacobs, Jr.
 
 
 4
 Jacobs' case was called for trial on April 11, 1988. Jacobs' counsel moved to continue the case, citing as grounds the unavailability of Jacobs, Jr., who on April 4, 1988 had been transported to the Atlanta Correctional Facility by the United States Marshal's Service after Jacobs' trial had been continued.[1]
 
 
 5
 A hearing was conducted, at which time Jacobs' counsel informed the court that the attorney for Jacobs, Jr. had advised his client to assert his Fifth Amendment privilege if called to testify. Jacobs made no formal proffer of what his son would say if he did testify. Testimony at the hearing established that Jacobs, Jr. had been transferred one week before the case was called for trial. Though Jacobs was aware at the time that his son had been transferred, he did not tell his attorney until the day of the trial. The district court denied the motion.
 
 
 6
 A jury was immediately thereafter empaneled, and the action proceeded to trial. At trial, the Government offered and the trial court admitted certain testimonial and documentary evidence relating to the possession by Jacobs, and delivery by Jacobs to George Junior Paul on August 15, 1987, of those counterfeit Federal Reserve notes referenced in the bill of indictment. Paul testified on behalf of the Government.
 
 
 7
 The Government also offered and the trial court admitted, pursuant to Rule 404(b) of the Federal Rules of Evidence and over Jacobs' objection, the testimony of Mark Conyers. Conyers testified that on two occasions in August of 1987 Jacobs had possessed and delivered to Conyers certain counterfeit Federal Reserve notes, other than those referenced in the bill of indictment and in transactions separate from those alleged in the bill of indictment.[2]
 
 
 8
 On April 12, 1988 the jury returned verdicts of guilty as to both counts contained in the bill of indictment. Upon return of the jury's verdicts, Jacobs moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure based on the trial court's denial of Jacobs' oral motion for a continuance made on April 11, 1988. The motion was denied.
 
 
 9
 Pursuant to the jury's verdict, the trial court imposed sentence on July 7, 1988 and entered judgment on July 11, 1988. Jacobs noted an appeal to this Court on July 18, 1988.
 
 II.
 
 10
 Jacobs contends the trial judge's denial of his motion for a continuance was an abuse of discretion and a violation of his due process rights.
 
 
 11
 A motion for continuance is addressed to the sound discretion of the trial court. United States v. Johnson, 732 F.2d 379, 381 (4th Cir.), cert. denied, 469 U.S. 1033 (1984). There are no rigid criteria that must be complied with:
 
 
 12
 "The matter of continuance is traditionally within the discretion of the trial judge.... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."
 
 
 13
 United States v. Badwan, 624 F.2d 1228, 1230 (4th Cir.1980), cert. denied, 449 U.S. 1124 (1981); Hutchins v. Garrison, 724 F.2d 1425, 1432 (4th Cir.1983), cert. denied, 464 U.S. 1065 (1984) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1976)). Courts have stated that where, as here, a motion is requested to secure the attendance of a witness, four factors are considered:
 
 
 14
 (1) Whether due diligence has been exercised to secure the attendance of the witness;
 
 
 15
 (2) Whether substantial favorable evidence would be tendered by the witness;
 
 
 16
 (3) Whether the witness is available and willing to testify; and
 
 
 17
 (4) Whether denial of the motion would materially prejudice the defendant.
 
 
 18
 United States ex rel. Searcy v. Greer, 768 F.2d 906, 913 (7th Cir.), cert. denied, 474 U.S. 996 (1985); United States v. O'Neil, 767 F.2d 780, 784 (11th Cir.1985). See Wright, Federal Practice & Procedure: Criminal 2d Sec. 832 (1982).
 
 
 19
 Analyzed in that light, it is not apparent that the trial judge abused his discretion in denying Jacobs' motion. Initially, Jacobs' allegations of prejudice are insubstantial. Assuming the essence of Jacobs, Jr.'s testimony is expressed in the writ request (contrary to the Government's suggestion of a total failure to demonstrate prejudice), the mere contradiction of a witness as to a "bad act," not charged specifically and thus not essential to conviction, may not by its absence materially prejudice Jacobs' case. Furthermore, the record clearly reflects counsel for Jacobs, Jr. had advised both Jacobs' counsel and counsel for the Government that his client had been advised to invoke his Fifth Amendment privilege if called. Whether Jacobs, Jr. would testify even if present is unclear. Speculation and conclusory allegations of prejudice are not sufficient to establish an abuse of discretion by the trial court in denying a motion for continuance. United States v. Lorick, 753 F.2d 1295, 1297 (4th Cir.), cert. denied, 471 U.S. 1107 (1985).
 
 
 20
 Questions of due diligence also arise. Jacobs was aware that his son had been transported to Atlanta one full week prior to trial. He waited until the day of trial to inform his attorney. In sum, the trial judge was well within his discretion to deny Jacobs' motion.
 
 
 21
 Jacobs also urges that, even if normally within the court's discretion, the Government's unilateral action in transferring Jacobs, Jr. before trial interferes with Jacobs' right to process and thus violates the Due Process Clause. See, e.g., United States v. Jackson, 757 F.2d 1486, 1492 (4th Cir.1985) ("Ordinarily, if the government refuses to produce a witness in its custody who is necessary to the defense, and the court denies habeas, the defendant's compulsory process may stand violated."), cert. denied, 464 U.S. 994 (1985). In this case, however, the Government did comply with the original writ. The Government's subsequent action in transferring Jacobs, Jr. was more probably the result of a previous request for a continuance granted by the court, not a malevolent attempt to exclude Jacobs, Jr.'s testimony. In any event, as Jackson indicates, the same requirements of material prejudice and due diligence, though phrased somewhat differently, are still applicable to a due process analysis. See Jackson, 757 F.2d at 1492. Jacobs' delay in notifying the Government of the absence of Jacobs, Jr., compounded by the dubious likelihood of Jacobs, Jr.'s actually testifying and the tangential value of any actual testimony, render the discretionary action of the trial judge constitutional.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Jacobs learned of the transfer on April 4, 1988
 
 
 [2]
 Jacobs had through discovery prior to trial been apprised of the substance of Conyers' expected testimony on behalf of the Government. In his Petition for a Writ of Habeas Corpus ad Testificandum, Jacobs set forth to the trial court, based on his conversations with Jacobs, Jr., that Jacobs, Jr., would testify that Mark Conyers had received the counterfeit Federal Reserve notes from Jacobs, Jr., and not from Jacobs