9 F.3d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William Von FLOWERS, Petitioner-Appellant,
v.
Donald W. GUDMANSON, Respondent-Appellee.
 No. 93-1118.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 26, 1993.[1]
Decided Nov. 9, 1993.
Rehearing and Suggestion for Rehearing En Banc
Denied Jan. 7, 1994.
 
 Before POSNER, Chief Judge, and RIPPLE and ILANA DIAMOND ROVNER, Circuit Judge.
 
 ORDER
 
 1
 Petitioner appeals from a district court order denying his petition for writ of habeas corpus. 28 U.S.C. § 2254. For the reasons stated in the attached district court order, the judgment is AFFIRMED.
 
 
 2
 ATTACHMENT.
 
 
 3
 UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN
 
 
 4
 WILLIAM VON FLOWERS, Petitioner,
 
 
 5
 v.
 
 
 6
 GERALD BERGE, Respondent.
 
 
 7
 Civil Action No. 91-C-1252.
 
 ORDER
 
 8
 TERENCE T. EVANS, Chief Judge.
 
 
 9
 William Von Flowers is presently serving a sentence at the Waupun Correctional Institution due to his conviction for second-degree sexual assault. On September 26, 1990, Milwaukee County Circuit Court Judge Robert W. Landry sentenced Mr. Flowers to a 7-year prison term, consecutive to a separate 5-year sentence that he was then serving. In his petition for habeas corpus here, Mr. Flowers raises two grounds for relief: He says he was denied his sixth amendment right to compulsory process, and he claims that the prosecutor misrepresented the facts at trial. In other filed documents, he contends that the state's evidence was insufficient for conviction.
 
 
 10
 On July 7, 1992, Mr. Flowers requested appointment of an attorney to represent him "in the interest of justice and attainment of due process." This reason is essentially the same presented in Mr. Flower's first request for an attorney, which I denied on December 6, 1991. The only additional reason presented is that he has "no formal learning of an attorney," a situation which was also apparent as of December 6, 1991. He has thus resented no new justification for appointment of an attorney. Furthermore, at this stage of his petition, counsel is unnecessary, as the petition is already fully briefed. That motion is DENIED.
 
 Compulsory Process
 
 11
 The sexual assault of which Mr. Flowers was convicted occurred during the morning of September 2, 1988. Cynthia Wynn was the first attorney appointed to represent Mr. Flowers, but she moved to withdraw on October 12, 1988, after three appearances. Attorney Michael Backes was then appointed to represent Mr. Flowers. Trial was first scheduled for December 1988, then postponed to January 1989, then April, May, and September. Mr. Backes employed an investigator who contacted and interviewed witnesses relating to this case, but withdrew on November 21, 1989, citing "an irreconcilable breach in the attorney-client relationship." Trial was rescheduled to January 1990. Donald Clark was next appointed to represent Mr. Flowers, but he was replaced by Robert Kuhnmuench, who appeared with Mr. Flowers on January 3, 1990. At that hearing, Mr. Kuhnmuench advised the court that Mr. Flowers wanted him to withdraw as counsel and that Mr. Flowers wished to represent himself. The request was granted. On May 9, 1990, Mr. Flowers appeared for trial, but the trial was postponed due to a conflicting jury trial. Trial was rescheduled for September 24, 1990. During 1990, Mr. Flowers was imprisoned on other charges.
 
 
 12
 On September 24, 1990, a little over 2 years after the date of the alleged sexual assault, the case finally went to trial. At that time, Mr. Flowers requested the assistance of an investigator, implicitly requesting an adjournment of the trial. He claimed that being in prison had impeded his ability to investigate his case and procure witnesses and that he had no defense to present. The only specific topic for investigation that he noted was related to medical reports regarding the victim.
 
 
 13
 The trial judge, noting that the trial had been scheduled and postponed seven times and that Mr. Flowers had had 2 years to prepare his case, denied Mr. Flower's request for further delay and adjourned the case to the next day. On September 25, after his motion for adjournment was again denied, Mr. Flowers protested the denial of his request by refusing to participate in his trial. With some exceptions, Mr. Flowers sat out his trial in the "bullpen" where he could listen to the proceedings through a speaker. Mr. Flowers did not cross-examine any state witness or call any witnesses of his own. He did, however, enter the courtroom to give a closing statement to the jury.
 
 
 14
 On this petition, Mr. Flowers contends that his right to compulsory process was violated because he could not conduct investigation and secure witnesses. The constitutional right of the accused to have compulsory process to obtain witnesses in his defense is well-established. See, Washington v. Texas, 388 U.S. 14 (1967) ("The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense...."). The right to compulsory process includes the "right to formulate [a] defense uninhibited by government conduct that, in effect, prevents him from interviewing witnesses who may be involved and from determining whether he will subpoena and call them in his defense." United States v. Calzada, 579 F.2d 1358, 1360 (7th Cir.1978). This is not a case where witnesses--subpoenaed or not--were unavailable for trial or inhibited due to the state's actions. Neither Judge Landry nor the state denied any request to have subpoenas served. Mr. Flowers gave them no specific names at all. The issue in this case is not one of compulsory process alone. Mr. Flower's petition really concerns the propriety of the denial of a continuance to give Mr. Flowers further opportunity to investigate and secure witnesses.
 
 
 15
 A motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed unless there has been an abuse of that discretion. United States v. Kamel, 965 F.2d 484 (7th Cir.1992). Not every denial of a motion for continuance to obtain witnesses violates the right to compulsory process. See, e.g., McKinney v. Wainwright, 488 F.2d 28 (5th Cir.), cert. denied, 416 U.S. 973 (1974). But, a court may not refuse to grant a reasonable continuance for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense. Dickerson v. Alabama, 667 F.2d 1364 (11th Cir.), cert. denied, 459 U.S. 878 (1982); Singleton v. Lefkowitz, 583 F.2d 618 (2d Cir.1978). Several factors are to be considered in determining whether the denial of a motion for continuance was an abuse of discretion and deprived an accused of his right to compulsory process: (1) whether due diligence has been exercised to obtain the attendance of the witnesses; (2) whether substantial favorable evidence would be tendered by the witness; (3) whether the witness is available and willing to testify; and (4) whether the denial of the continuance would materially prejudice the defendant. United States ex rel. Searcy v. Greer, 768 F.2d 906, 913 (7th Cir.1985).
 
 
 16
 These factors weigh in favor of the state. Mr. Flowers was extremely delinquent in preparing his case. His case had been pending for 2 years and he had been representing himself for 9 months. Mr. Flowers simply failed to timely pursue the matter. He unreasonably waited until his final trial date to raise for the first time his alleged problem in producing witnesses, when he could have brought the problem to the court's attention at an earlier date. Mr. Flowers has not shown that he was in any way hampered in his effort to find witnesses and procure their attendance, even though he was incarcerated. His list of witnesses raised for this petition differs little from the list prepared by attorney Backes in April 1989. The only person not included on Backes's list is Mr. Flowers's mother. Four of the witnesses that Mr. Flowers now points out were in fact Mr. Flower's close relatives: his mother, brother, and two nieces. Although their attendance could possibly have been procured within a reasonable time, there appears to be little reason why they could not have been procured for the September 24 trial, and little reason to believe that the situation would change for the next trial date.
 
 
 17
 Mr. Flowers did not give Judge Landry enough information to determine whether their testimony would be favorable. On September 24, Judge Landry was given no specifics about Mr. Flower's likely defense to the alleged crime or the identities of the possible witnesses noted above. He did not describe the content of any witness's testimony other than hopefully obtaining an expert to discuss the victim's medical report. Although the testimony of any of these witnesses would likely have been relevant, helpful, and not cumulative, it mostly would have been because Mr. Flowers failed to present any defense or cross-examination at all. In any case, based on the information before him on September 24 and 25, 1990, Judge Landry had no indication that Mr. Flowers would be able to find favorable evidence.
 
 
 18
 In sum, the denial of a continuance was neither an abuse of discretion nor a violation of the right to compulsory process.
 
 Prosecutorial Misrepresentation
 
 19
 It appears that Mr. Flowers's brother's four children were sleeping in a bedroom of the house when the assaults took place there. Mr. Flowers argues that the prosecutor misled the jury by failing to question the victim regarding whether anyone else was in Mr. Flower's house and by failing to correct the victim when her statements implied that the two were the only persons in the house.
 
 
 20
 Mr. Flowers has procedurally defaulted on this claim. A pro se defendant is subject to the same rules of procedure as defendants who are represented by counsel. See Faretta v. California, 422 U.S. 806, 834-35 n. 46 (1975). Mr. Flowers failed to object to any of the questions by the prosecutor or inferences that may have resulted. Mr. Flowers claims that the default should be excused because he could not have objected until he received the transcript of the trial. Mr. Flower's voluntary failure to attend his own trial cannot excuse his default, however. Moreover, Mr. Flowers was given the opportunity to listen to the trial over the bullpen speaker, giving him the chance to take some step to object at that time. The issue was also never raised on appeal.
 
 
 21
 In any case, this claim fails as well. A conviction obtained by the use of false testimony must be set aside if there is any reasonable likelihood that the dishonest statements could have affected the judgment of the jury. United States v. Agurs, 427 U.S. 97, 103 (1976); United States v. Douglas, 874 F.2d 1145, 1159 (7th Cir.1989). The fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt. United States v. Bagley, 473 U.S. 667, 680 (1985). Reviewing the trial record, the prosecutor may have failed to correct false implications from the victim's testimony, but the effect was harmless beyond a reasonable doubt.
 
 
 22
 The portions of testimony that Mr. Flowers points out are the victim's statements that Mr. Flowers "kept giving me this sob story about him being alone, he didn't want to be alone, and I said, well, I'm sorry, I have to go, you know," and "[s]o I walked him to the steps, and he gave me the same sob story again that he didn't want to be alone...." Trial transcript at 86. Near the end of her testimony, the victim was asked whether she had seen any of the other house "occupants" that evening and she answered "no." Trial transcript at 101. Assuming Mr. Flower's contentions to be true,[1] however, the victim did see at least some of the children in the house later that morning when the children awoke to go home.
 
 
 23
 In the first place, the "falsity" of the victim's statements is questionable. By being "alone," Mr. Flowers could have meant being without a woman's or adult's company. By answering that she had seen no other "occupants," the victim may not have considered the children, instead assuming occupants to mean permanent residents of Mr. Flowers's apartment or the other half of his duplex.
 
 
 24
 In the second place, these statements, and any inferences therefrom, were harmless beyond a reasonable doubt. Whether anyone else was in the house did not affect any of the elements of the crime: intercourse without consent and with the use or threat of force. Whether the victim was screaming or resisting was immaterial. Whether the nieces heard laughter at one point is inconsequential, since the victim admitted that she and Mr. Flowers had had consensual sex prior to the assault. As long as a reasonable jury believed the victim, it could convict. Correction of these statements, if correction had to be made, would not have impeached the victim anywhere near enough to make her testimony unbelievable.
 
 
 25
 The remainder of Mr. Flowers's argument is really his complaint that the prosecutor did not ask questions that would have benefitted him and that he himself could have asked if he had participated at trial. The state has no duty to fill in for a defendant who refuses counsel and refuses to conduct his own cross-examination or defense.
 
 Insufficiency of Evidence
 
 26
 In supplementary documents, Mr. Flowers contends that the "evidence presented by the state was so insufficient in probative value that, as a matter of law, no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." He contends that the victim's testimony at trial was "patently incredible."
 
 
 27
 Mr. Flower's arguments on this point fail. The victim testified at trial about the assault and identified Mr. Flowers as the assailant when he was brought into the courtroom. Her testimony was not drawn into question. Although no one else witnessed the assault, her testimony on other key points was corroborated by other evidence. A gas station attendant supported her testimony regarding her escape from Mr. Flowers. Police photographs and testimony indicated that the specific objects that Mr. Flowers had allegedly pushed into the victim's vagina were found in Mr. Flower's house as the victim had described.
 
 
 28
 In regard to sufficiency of evidence, a conviction will stand if any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Upon the facts presented at trial, a reasonable jury could easily have convicted Mr. Flowers of any of three acts of sexual assault beyond a reasonable doubt.
 
 Conclusion
 
 29
 Mr. Flower's petition for writ of habeas corpus is DENIED.
 
 
 30
 Mr. Flowers filed several motions in regard to this case: a motion for summary judgment, a motion for an evidentiary hearing, motions to supplement cited authorities, and a "motion to assist court in reaching essential merits of the pro se[ ] petitioner's lawsuit," for example. I treated his brief in support of summary judgment and his motions to supplement authorities as expansions of his brief in support of the petition for writ of habeas corpus and considered them in making this decision. Because my decision could be made based on the written briefs and record before me, a hearing was unnecessary and that motion is DENIED. The other motions are essentially nonsense. All are DENIED. The petition is DISMISSED, and this case is CLOSED.
 
 
 31
 SO ORDERED at Milwaukee, Wisconsin, this 2 day of December, 1992.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Petitioner responded that he waives oral arguments. Thus, the appeal has been submitted on the briefs and record
 
 
 [1]
 And this assumption is a far reach since none of Mr. Flowers's brother's and nieces' statements to Mr. Backes's investigator are sworn documents