**Kenneth Wayne STORY,
Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

**No. 90–1313
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1991.

Kenneth W. Story, Huntsville, Tex., pro se.

S. Michael Bozarth, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

KING, Circuit Judge:

A Texas state court convicted the Petitioner–Appellant Kenneth Story (Story) in 1985 of aggravated sexual assault. After exhausting his state court remedies, Story brought this habeas corpus petition in federal district court, alleging that the Texas Department of Corrections (TDC) refused to consider him for administrative good conduct time in violation of the ex post facto clause of the United States Constitution. He also alleged that various rulings by the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution. He appeals from the district court's dismissal without prejudice of his claim that the TDC improperly failed to consider him for good conduct time, and the district court's dismissal with prejudice of his claims attacking his conviction. We vacate and remand with instructions to dismiss with prejudice Story's claim that he is entitled to be considered for administrative good conduct time and affirm the district court's dismissal of Story's other claims.

## I. Background

A Texas state court convicted Story in 1981 of raping a child under seventeen years of age, sentenced him to ten years in prison, and suspended his sentence subject to probation. In September 1985, a Texas state court convicted Story of aggravated sexual assault of a child under 14 years of age. The state trial court revoked Story's probation and sentenced him to a consecutive 30–year term for aggravated sexual assault.

After an unsuccessful direct appeal and a petition for state post-conviction review, which was dismissed by the Texas Court of Criminal Appeals without written opinion, Story filed this petition for a writ of habeas corpus in federal district court. He claimed that the TDC retroactively applied the 1987 version of the Prison Management Act (PMA), Tex.Rev.Civ.Stat.Ann. art. 6184o, § 3(b)(2)(H) (Vernon Supp.1987), now codified as Tex. Gov't Code Ann. § 498.027 (Vernon 1990), and improperly failed to consider him for administrative good conduct time. He also alleged that the state adduced insufficient evidence at trial to support his conviction; that the trial court erred when it failed to instruct the jury on the lesser included offenses of indecency with a child and indecent exposure; that the trial court erred by admitting evidence of extraneous offenses; that he was denied his right to confront witnesses; and that the trial court erred by admitting certain expert testimony.

Both parties moved for summary judgment. The state also moved to strike Story's claim that he was being denied consideration for administrative good conduct time. The district court referred Story's petition to a magistrate, who recommended that the district court dismiss all of Story's claims on the merits. Story filed objections, and after an independent review, the

district court adopted the magistrate's report on all of Story's claims except his claim pertaining to good conduct time. The district court dismissed Story's good conduct time claim for want of jurisdiction and without prejudice to Story's right to seek habeas relief in the appropriate federal court. It dismissed Story's other claims with prejudice. Story filed a timely notice of appeal, and the district court issued a certificate of probable cause. Story appeals from the dismissal of all of his claims except for his claim that the jury was not instructed on lesser included offenses.

## II. Good Conduct Time

Story alleges that the TDC improperly denied considering him for administrative good conduct time under the 1987 version of the PMA. He argues that he was eligible for such good conduct time under the 1983 version of the PMA, which was in effect on the date that he committed the offense, but not under the 1987 amendments. The state's retroactive application of the 1987 version of the PMA, he contends, violates the ex post facto clause of the United States Constitution. Article I, § 10, cl. 1.

The district court dismissed Story's administrative good conduct time claim without prejudice because "[j]urisdiction over such a claim is based on 28 U.S.C. § 2241, as distinguished from that available under [28 U.S.C.] § 2254." The district court reasoned that in order "[t]o entertain a petition for habeas corpus relief under § 2241, the district court must have jurisdiction over the prisoner or his custodian at the time the petition is filed." Story is confined in the Wynne Unit of the TDC at Huntsville, Texas—a location outside of the jurisdiction of the District Court for the Northern District of Texas. The district court, therefore, dismissed the claim without prejudice to Story's right to refile in the appropriate district court.

■ A prisoner may bring a claim for good conduct time under 28 U.S.C. § 2254. See *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973) (§ 2254 habeas petition is sole reme-

dy for state prisoner seeking speedier release from imprisonment based on application of good conduct time). Section 2241, however, provides the general jurisdictional basis for federal courts to consider challenges to both state and federal judgments. Section 2254 specifically confers jurisdiction on the federal courts to consider collateral attacks on state court judgments, *Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 509 n. 9, 102 S.Ct. 3231, 3236 n. 9, 73 L.Ed.2d 928 (1982), but § 2241, rather than § 2254, specifies the court in which a petition attacking a state court judgment must be brought.

Section 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." In *Ahrens v. Clark*, the Supreme Court interpreted this provision to mean that a district court lacks subject matter jurisdiction if the prisoner or his custodian is not confined within the district court's territorial boundaries. *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948).

This interpretation proved unfortunate, however, because the district court that has jurisdiction over the prisoner frequently is not the most convenient forum in which to entertain the prisoner's habeas petition. The necessary records and witnesses often are located near the sentencing court rather than the court with jurisdiction over the prisoner, and courts with prisons within their jurisdiction receive an inordinate proportion of habeas petitions. In response to this situation, Congress in 1966 passed 28 U.S.C. § 2241(d). Section 2241(d) provides:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall

have concurrent jurisdiction to entertain the application.

■ Section 2241(d) applies only to prisoners confined under the judgment of a state court. If the petitioner is a federal prisoner, or if the state sentencing court is in a different state from the prisoner or his custodian, the district court still must have jurisdiction over the prisoner or his custodian. In the instant case, the district court applied the rule applicable to federal prisoners to Story, who is confined under the judgment of a state court. Section 2241(d), however, directly applies to Story's petition. The District Court for the Northern District of Texas had jurisdiction over the Dallas state court that convicted Story, and thus had concurrent jurisdiction under § 2241(d) and § 2254 to entertain Story's claim that he should be considered for administrative good conduct time.

■ The state argued that the district court should not entertain Story's claim because that claim should have been the subject of a separate petition. If the state's contention is correct, we should affirm the district court's dismissal without prejudice on that basis. The state noted that Rule 2(d) of the Rules Governing Section 2254 Cases states:

> A petition shall be limited to the assertion of a claim for relief against the judgment or judgments of a single state court (sitting in a county or other appropriate political subdivision). If a petitioner desires to attack the validity of the judgments of two or more state courts under which he is in custody or may be subject to future custody, as the case may be, he shall do so by separate petitions.

The state argued that the TDC, which calculates good conduct time, is the only authority attacked by Story's good conduct time claim. His other claims, they observe, attack the validity of the state court judgment. Under Rule 2(d), the state concludes, Story must bring his claim challenging the TDC's refusal to consider him for good conduct time in a separate petition. We disagree.

Story's habeas petition challenges only one judgment—the state court judgment of conviction for aggravated sexual assault. The TDC is not a state court, and the application of good conduct time is not a judgment. Story's good conduct time claim attacks the conditions of his restraint under his judgment of conviction for sexual assault. Story, therefore, was not required to bring his good conduct time claim in a separate petition.

■ Story's good conduct time claim, however, fails on the merits. If a state computes good conduct time on the basis of a law that became effective after the offense that resulted in the prisoner's incarceration, and if that computation is less favorable to the prisoner than the computation that he would have received under the law that was effective on the date that he committed the offense, the state violates the constitutional provision against ex post facto laws. *Weaver v. Graham*, 450 U.S. 24, 33–36, 101 S.Ct. 960, 966–68, 67 L.Ed.2d 17 (1981).

■ The Texas courts have concluded that retroactive application of the 1987 amendments to the PMA in order to deny consideration for administrative good conduct time to prisoners who otherwise would receive such consideration violates the ex post facto clauses of the United States and Texas Constitutions. *See Ex Parte Rutledge*, 741 S.W.2d 460, 462 (Tex.Cr.App. 1987) ("retroactive application of the 1987 amendment of the PMA is violative of the ex post facto clause and the applicant's eligibility for parole is to be determined in accordance with the version of [the PMA] in effect at the time of the offense for which he is convicted"); *Ex parte Ruiz*, 750 S.W.2d 217, 218 (Tex.Cr.App.1988) ("the list of ineligible offenses contained in the 1987 amendments to the PMA may not be applied retroactively to one who committed his or her crime prior to the effective date of those amendments").

The 68th Texas legislature passed the PMA in 1983 as a stopgap measure to control prison overcrowding. When the TDC reaches an occupancy level of ninety-five percent, the PMA provides that certain

classes of inmates become eligible for a grant of thirty days administrative good conduct time. The grant of good conduct time has the effect of advancing the date of the inmate's parole eligibility and the date on which the state is required to release the prisoner to mandatory supervision. *Rutledge*, 741 S.W.2d at .460.

The PMA in effect on·or about June 17, 1985, the date on which Story committed the aggravated sexual assault, provided that prisoners may not receive administrative good conduct time if they are "serving a sentence for an offense listed in Subdivision (1), Subsection (a), Section 3f, Article 42.12, Code of Criminal Procedure, 1965...." Tex.Rev.Civ.Stat.Ann. art. 6184o, § 2(b)(2) (Vernon 1983). The section to which the PMA refers lists offenses that disqualify an inmate for probation, and the PMA provides that prisoners convicted of those offenses also are ineligible for administrative good conduct time. Prior to the legislature's 1983 amendments, § 3f(a)(1) referred to aggravated rape and did not refer to aggravated sexual assault. The legislature enacted the PMA in the same legislative session in which it amended § 3f(a)(1) to include aggravated sexual assault. Story argues that the legislature intended for the PMA to refer to the unamended rather than the amended version of § 3f(a)(1).

The magistrate rejected Story's good conduct time claim on the merits. The magistrate reasoned that the law that controlled Story's eligibility for parole at the time of his conviction was Tex.Code Crim. Proc.Ann. art. 42.12, § 15(b) (Vernon 1983), rather than the PMA. Section 15(b) stated:

> If a prisoner is serving a sentence for the offenses listed in Section 3f(a)(1) of this Article ..., he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years.

The magistrate reasoned that this section sets the earliest date for which Story is eligible for parole at one-third of his maximum sentence without reference to good conduct time, and thus makes the computation of administrative good conduct time irrelevant. We agree that § 15(b) sets the earliest date on which Story may be considered for parole, but disagree that § 15(b) makes the computation of good conduct time irrelevant. Although § 15(b) prohibits considering good conduct time in determining the earliest date on which a prisoner is eligible for parole, it does not prohibit the accumulation of good conduct time. Presumably, Story's accrued good conduct time will affect the date when the state must release him to mandatory supervision, even if it does not affect the date on which he is first eligible for parole.[1]

---

1. The version of the Texas Criminal Code in effect when Story committed the crime for which he was convicted provided:

> A prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision by order of the Board when the calendar time he has served plus any accrued good conduct time equals the maximum term to which he was sentenced.

Tex.Code Crim.Proc.Ann. art. 42.12 § 15(f) (Vernon 1983). This section is now codified at Tex. Code Crim.Proc.Ann. art. 42.18 § 8(c) (Vernon Supp.1990). The legislature changed the numbering from art. 42.12 to art. 42.18 in 1985. Acts 1985, 69th Leg., ch. 427, § 2, eff. Sept. 1, 1985. In 1986, the legislature amended art. 42.18 § 8(c) to refer to art. 42.12 § 3g(a)(1) (renumbered from § 3f(a)(1)). This amendment provided that after September 1, 1987 prisoners convicted of the same list of crimes for which probation and administrative good con-

duct time are not available also may not be released to mandatory supervision. Acts 1986, 69th Leg., 3rd C.S., ch. 8, § 1, eff. Sept. 1, 1987. The 1987 legislature again amended this section, with the same effective date of September 1, 1987, to reflect the increased list of crimes for which administrative good conduct time is not available. Acts 1987, 70th Leg., ch. 1101, § 7, eff. Sept. 1, 1987. Story clearly was not prohibited from being released to mandatory supervision on or about June 17, 1985, the date on which he committed the aggravated sexual assault. We assume that the Texas courts would apply *Weaver* and would find that the TDC's retroactive application of the 1987 version of art. 42.18 § 8(c) in order to deny a prisoner release to mandatory supervision who otherwise would be available for such release violates the ex post facto clause. Indeed, that rationale presumably underlies the Court of Criminal Appeals' rejection of Story's state habeas petition.

Story errs, however, in asserting that the version of § 3f(a)(1) to which the 1983 version of the PMA referred did not include aggravated sexual assault. The Texas legislature amended § 3f(a)(1) in 1983, during the same session in which they enacted the PMA, and substituted the crime of aggravated sexual assault, which the legislature had just made a crime, for aggravated rape, which the legislature repealed.[2] The PMA had an effective date of August 29, 1983, and the amendments to § 3f(a)(1) had an effective date of September 1, 1983. Story argues that the PMA refers to the version of § 3f(a)(1) that existed prior to the 1983 amendments because the PMA became effective two days before the effective date of those amendments. We disagree.

Story places great importance on the fact that the PMA refers to "Article 42.12, Code of Criminal Procedure, 1965" and does not state "1965 as amended" or "1965 amended." The legislature, however, clearly did not intend to refer to the unamended 1965 version of article 42.12. The 1965 version of article 42.12 did not contain a § 3f or an applicable list of offenses. The critical question for this appeal is whether the legislature intended the statute to refer to the amended version of article 42.12 in effect before or after the 1983 amendments. The question is one of legislative intent, and the Texas courts have reasoned that:

> Germane to judicial ascertainment of legislative intent are such matters as surrounding circumstances, legislative history, caption of the act and consequences of a particular construction, as well as a legislative mandate to reconcile, if possible, amendments to the same statute enacted at the same session.

*Stanfield v. State*, 718 S.W.2d 734 (Tex. Crim.App.1986) (citing Code Construction Act, Tex. Gov't Code Ann. §§ 311.023 and 311.025).

In § 2(b)(2) of the PMA, the legislature provided that prisoners convicted of crimes for which probation was unavailable under § 3f(a)(1) should not be eligible for administrative good conduct time. Story, however, would have us conclude that the legislature intended to refer to an outdated list of crimes that included aggravated rape, which the legislature had just repealed, and that did not include aggravated sexual assault, which the legislature had just enacted. In addition, Story's interpretation results in a different list of crimes for determining who may receive probation than for determining who may receive administrative good conduct time, contrary to the legislature's apparent intent. The circumstances surrounding the enactment of the PMA, and the consequences of accepting Story's construction of that statute, indicate that the legislature did not intend such a result. We conclude that the 1983 legislature intended the PMA to refer to the version of § 3f(a)(1) that it had just amended rather than the superseded version.

Story correctly observes, however, that the Texas Court of Criminal Appeals in a recent unpublished, per curiam opinion decided that a prisoner convicted of aggravated sexual assault in 1985 should be considered for administrative good conduct time. *See Ex parte Luther Malone*, 757 S.W.2d 383 (Tex.Crim.App.1988). The Texas Rules of Appellate Procedure, however, provides that unpublished Texas opinions may not be cited as authority by counsel or by a court, and such unpublished opinions have no value as precedent. Tex.R.App.P. 90(i) (West 1989); *Exxon Co., U.S.A. v. Banque de Paris Et Des Pays–Bas*, 889 F.2d 674, 675 (5th Cir.1989). The *Malone* court's short per curiam opinion not only is not authority for Story's position, it is not persuasive on the issue of whether the

---

If Story succeeds on the merits of his good conduct time claim, therefore, he presumably will hasten the date for which he will be eligible for mandatory supervision, even if he will not hasten the date on which he first may be considered for parole.

2. Aggravated sexual assault was not a crime until the 1983 legislature enacted § 22.021 of the Tex.Penal Code Ann. (Vernon 1983). Aggravated rape, which had been an offense listed under § 3f(a)(1), was repealed by that same Act. *See* Acts 1983, 68th Leg., p. 5312 & p. 5321, ch. 977, §§ 3 & 12, effective September 1, 1983.

1983 version of the PMA referred to aggravated sexual assault. The *Malone* court assumed, without discussion, that the version of § 3f(a)(1) in effect in 1983 did not include aggravated sexual assault. Our examination of the applicable statute, however, indicates the contrary.

■ In order for a criminal or penal law to be ex post facto, it must be applied retroactively, and it must disadvantage the offender affected by it. *Weaver v. Graham,* 450 U.S. 24, 33–36, 101 S.Ct. 960, 966–68, 67 L.Ed.2d 17 (1981). Even if Story is correct in asserting that retroactive application of the 1987 version of the PMA to someone who otherwise would have been available for administrative good conduct time violates the ex post facto clause (a question we need not decide), he cannot show that he has been disadvantaged by such application because he is not entitled to be considered for administrative good conduct time under either the 1983 or 1987 version of the PMA. We therefore vacate and remand with instructions to the district court to dismiss Story's good conduct time claim with prejudice.

### III. Extraneous Offenses

Story was convicted of having oral sex with Crystal Feagin, his 9–year–old stepdaughter. At trial, the state introduced testimony indicating that Story exposed himself and masturbated in front of Crystal and one of her friends, Billie Martin. Story contends that the admission of this extraneous offense evidence violated his right to due process of law under the Fourteenth Amendment to the United States Constitution.

■ An extraneous offense may be admitted into evidence without violating the due process clause if the government makes a "strong showing that the defendant committed the offense" and if the extraneous offense is "rationally connected with the offense charged." *Enriquez v. Procunier,* 752 F.2d 111, 115 (5th Cir.1984), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2658, 86 L.Ed.2d 274 (1985). We conclude that the trial court's decision to admit the testimony concerning Story's masturbation in front of these girls met this test.

■ The government made a strong showing that the defendant committed the offense. The girls provided substantially similar testimony that Story masturbated in front of them, and Story presented no evidence directly contradicting their testimony. The evidence also met the second prong of the *Procunier* test, that the incident be rationally connected with the charged offense, because it indicated that Story had a desire to engage in sexual conduct in Crystal's presence.

■ Story also alleges that the district court improperly admitted the testimony of a physician who testified that Crystal's hymen had been broken and torn and that the nature of the scars indicated that a blunt object penetrated her vagina at least four times. Story argues that this testimony constituted improper extraneous offense evidence that he had vaginal intercourse with Crystal. The doctor, however, did not testify that Story had sexual intercourse with Crystal. He testified that he had no opinion whether Story was responsible for the injuries to Crystal's vagina, and explained that an inanimate blunt object, or someone other than Story, could have caused the injuries.

Even if the physician's testimony could be considered extraneous offense evidence, it was admissible under the *Procunier* test. The doctor's evidence tended to corroborate Crystal's testimony that she had vaginal intercourse with Story. Crystal's testimony, combined with the doctor's, made a strong showing that such vaginal intercourse occurred, and the evidence of vaginal intercourse was rationally related to the charged offense because it indicated Story's sexual attraction to Crystal.

### IV. Sufficiency of the Evidence

■ Story argues that the evidence was insufficient to support his conviction. Penetration of the victim's mouth by the defendant's penis is an element of the crime for which Story was convicted. The evidence of penetration was not adequate, he argues, because Crystal testified before the

grand jury that he placed his penis on the edge of her mouth rather than inside of it.

On review, we must determine whether any rational trier of fact, considering the evidence in the light most favorable to the prosecution, could find the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The evidence need not exclude every reasonable hypothesis of innocence, however, and a jury may choose any reasonable construction of the evidence. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *United States v. Alonzo*, 681 F.2d 997, 1002 (5th Cir.), *cert. denied*, 459 U.S. 1021, 103 S.Ct. 386, 74 L.Ed.2d 517 (1982).

Crystal gave ample testimony at trial concerning penetration. Her grand jury testimony, arguably, conflicted with her trial testimony, but she explained at trial that she had been nervous during her grand jury testimony and that she had meant to testify that Story's penis penetrated her mouth, but not very far. Viewing the evidence in the light most favorable to the prosecution, and drawing all inferences favorable to the verdict, we conclude that a rational jury could have believed Crystal's trial testimony and found beyond a reasonable doubt that penetration occurred.

### V. Confrontation

After the sexual abuse had been reported to officials, Crystal made a videotaped statement that became the basis of a police officer's report. Story contends that the trial court's decision to admit the officer's report into evidence violated Story's federal constitutional right to confront witnesses against him because his attorney was unable to cross-examine Crystal at the time that she was being videotaped. The Supreme Court, however, has held that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California*

*v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). Crystal testified at trial, and Story's attorney cross-examined her concerning the videotape. Because Crystal testified as a witness and was subject to full and effective cross-examination by Story's attorney, we conclude that Story was not denied his right to confront witnesses under the Sixth Amendment to the United States Constitution.

### VI. Expert Witness

Story also challenges the admission of Patricia Bryant's testimony, an investigator for the Dallas County Child Welfare division of the Texas Department of Human Resources. Bryant testified that Crystal initially displayed guilty feelings about her sexual activities with Story and that children who have been sexually abused normally have such feelings. Story contends that the trial court should not have permitted Bryant to give expert opinion testimony and that her testimony impermissibly bolstered Crystal's credibility.

Story's argument amounts to a claim that the state misapplied its own evidentiary law. In order to prevail, Story must demonstrate that such a violation occurred and that the violation rendered the state proceedings fundamentally unfair. *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir.1988). Story fails to meet either prong of this test. Bryant holds a Bachelor of Science degree in social rehabilitation and social services, and she held her job with the child welfare office for more than four years before she began her investigation into whether Crystal had been abused. The decision to admit expert testimony lies within the discretion of the trial judge, and the trial judge in the instant case does not appear to have abused his discretion by admitting Bryant's testimony. *Wilson v. Scott*, 412 S.W.2d 299, 304 (Tex.1967); *Milkie v. Metni*, 658 S.W.2d 678, 679 (Tex. App.—Dallas 1983, no writ).

Even assuming that the district court erred, however, the admission of Bryant's testimony did not make the state proceedings fundamentally unfair. We note that Story's attorney had ample opportunity to

cross-examine Bryant on her testimony; and in light of Bryant's professional status, education, and experience, Story has not shown that the admission of Bryant's testimony rendered his trial fundamentally unfair.

### VII. Conclusion

For the foregoing reasons, we vacate and remand with instructions for the district court to dismiss Story's good conduct time claim with prejudice, and affirm the district court's dismissal of the remainder of Story's claims.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.