**Vernell CARSON, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, et al., Respondents–Appellees.**

**No. 91–5562.**

United States Court of Appeals, Fifth Circuit.

June 8, 1993.

---

Gavin H. McInnis, Hallmark, Jacobson, McInnis & Guglielmi (Court–Appointed), Houston, TX, for petitioner-appellant.

David B. Fannin, Ledbetter & Benjamin, P.C., Austin, TX, Tommy L. Skaggs, Victoria Benitez, Roxanne Nemcik, Asst. Attys. Gen., Austin, TX, for respondents-appellees.

Before POLITZ, Chief Judge, JOHNSON and JOLLY, Circuit Judges.

POLITZ, Chief Judge:

Vernell Carson appeals the denial of his petition, under 28 U.S.C. § 2254, for habeas corpus relief. Finding no error, we affirm.

### Background

In February 1985, Roberta Smith and Janet Chase took ten-year-old Carlette Deary to the hospital because of complaints of genital pain. Examination by physicians revealed evidence of sexual abuse, including a positive test for gonorrhea. Carlette said that Carson, her mother's live-in boyfriend, had repeatedly subjected her to sexual assaults. Several weeks later Carlette restated her allegations of abuse during a videotaped interview conducted by Cheryl Boyd, a social worker with the Texas Department of Human Resources. The Texas state grand jury indicted Carson for aggravated sexual assault on a child. Carson pleaded not guilty but admitted a prior conviction qualifying him for enhanced sentencing as a repeat offender. Boyd and Carlette both testified at Carson's jury trial. Without objection from defense counsel, the prosecution introduced the videotape into evidence, as permitted by Tex. Code Crim.Proc. § 38.071.[1] Carson was convicted and sentenced to 35 years imprison-

ment. The Texas Court of Appeals affirmed the conviction.

Carson subsequently filed three unsuccessful state petitions for post-conviction relief. The first petition, denied due to the pendency of his direct appeal, alleged defects in the indictment and ineffective assistance of counsel because of the failure by his attorney to object to those defects. The second, denied on the merits, raised anew the points stated in the first and also claimed error in the trial court's failure to grant a mistrial for improper introduction into evidence of a prior criminal conviction. In his third petition Carson claimed that use of the videotape deprived him of his sixth amendment confrontation rights and of due process of law, and that his attorney's failure to object to admission into evidence of the videotape amounted to ineffective assistance of counsel. The Texas Court of Criminal Appeals, rejecting a trial court recommendation, denied Carson relief on this third application.[2]

Carson then filed the instant federal habeas application under 28 U.S.C. § 2254 claiming that use at trial of the videotape, as well as hearsay testimony by several witnesses, violated his confrontation rights under the Constitutions of the United States and Texas and deprived him of due process of law. He further claims that his attorney's failure to challenge at trial or on appeal the admission into evidence of the videotape and hearsay testimony constituted ineffective assistance of counsel. The trial court, adopting the recommendation of a magistrate judge, granted summary judgment for the state. Carson timely appealed.

### Analysis

Carson assigns as error the district court's

---

1. As Carson repeatedly points out, after his conviction the Texas Court of Criminal Appeals held § 38.071 facially unconstitutional as violative of due process and confrontation guarantees of both the Texas and United States Constitutions. *Long v. State,* 742 S.W.2d 302 (Tex.Crim.App. 1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988). However, in *Briggs v. State,* 789 S.W.2d 918 (Tex.Crim.App.1990), the Texas court retreated from the stand it took in *Long,* holding that § 38.071 does not on its face

deprive criminal defendants of any constitutional right.

2. *See Ex parte Carson,* 778 S.W.2d 471 (Tex. Crim.App.1989) (table). In denying Carson's petition, the Texas court relied on *Ex parte Crispen,* 777 S.W.2d 103 (Tex.Crim.App.1989), where it held that absence of a timely objection to use of videotape testimony under § 38.071 precludes application of *Long* on collateral attack.

adverse ruling on his confrontation clause[3] and due process claims. He also challenges the district court's holding with regard to his ineffective assistance of counsel claims. We address these contentions in turn.

## A. Confrontation Clause

 The confrontation clause, applicable to the states through the fourteenth amendment,[4] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[5] The guarantees of a face-to-face confrontation with witnesses at trial and of the right to cross-examine those witnesses serve to protect the integrity of the fact-finding process in criminal trials.[6] Indeed, the Supreme Court has recognized cross-examination as the "greatest legal engine ever invented for the discovery of truth."[7] Carson argues that because Carlette did not make her videotaped statements under oath, in his presence, and while subject to cross-examination, use of those statements at trial deprived

him of his confrontation clause rights. We cannot agree.

The Supreme Court has noted that introduction of out-of-court statements, even if unreliable, does not violate the confrontation clause where the declarant testifies at trial subject to full and effective cross-examination.[8] In the instant case, Carlette testified at trial about her charges against Carson and was subject to unrestricted cross-examination. Carson had a full opportunity to test before the jury both Carlette's allegations of sexual abuse and the circumstances under which she made her videotaped statement, with the benefit of both the oath and of face-to-face confrontation. The confrontation clause requires no more.[9]

## B. Due Process

 Carson next claims that the prosecution's use of the videotape repeatedly placed Carlette's story before the jury and exposed jurors to prejudicial remarks by Boyd,[10] rendering his trial fundamentally un-

3. Carson does not on appeal renew, and we therefore do not address, his confrontation clause challenge to the prosecution's use of hearsay testimony at trial.

4. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

5. U.S. Const. amend. VI.

6. *E.g., Coy v. Iowa*, 487 U.S. 1012, 1019–20, 108 S.Ct. 2798, 2802–03, 101 L.Ed.2d 857 (1988) (*quoting Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)); *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The confrontation clause also ensures that the witnesses against a criminal defendant will testify under oath, and permits jurors to base their credibility assessments concerning those witnesses upon observation of their demeanor. *Craig.*

7. *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970) (*quoting* 5 J. Wigmore, *Evidence* § 1367 (3d ed. 1940)).

8. *United States v. Owens*, 484 U.S. 554, 560, 108 S.Ct. 838, 843, 98 L.Ed.2d 951 (1988); *Green.*

9. *See Story v. Collins*, 920 F.2d 1247 (5th Cir. 1991) (where victim in child sexual abuse case testified at trial subject to full cross-examination, confrontation clause not violated by testimony of another witness concerning victim's extrajudicial statements); *accord United States v. Spotted War Bonnet*, 933 F.2d 1471 (8th Cir.1991) (same),

*cert. denied,* — U.S. —, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992); *Jones v. Dugger*, 888 F.2d 1340 (11th Cir.1989) (same); *Briggs* (no denial of confrontation rights or fundamental unfairness in presentation of videotaped statement under section 38.071 where sexual abuse victim gave live testimony subject to full cross-examination during prosecution's case-in-chief at trial). Carson argues with some force that this case differs from *Green* and *Story* in that the videotape actually permitted the jury to observe Carlette's demeanor as she made statements incriminating him. In that respect, Carson claims that face-to-face confrontation and contemporaneous cross-examination would have eliminated the potentially unbalanced impact of those statements on the jury. Several factors in the instant case, however, lead us to find this argument unpersuasive. We first note that Boyd did not employ unduly leading interviewing techniques in eliciting Carlette's videotaped statement, and that Carlette did not rehearse her statement with Boyd prior to making the tape. In addition, as Carson concedes, Carlette testified subject to cross-examination by Carson's attorney almost immediately after the prosecution screened the videotape at trial. On facts such as these, we cannot assign crucial significance to contemporaneous cross-examination as Carson insists we should.

10. Carson here identifies two remarks by Boyd during her interview with Carlette. At one point, Boyd told Carlette to tell her "what [Carson] did so we can get something done about it." Later,

fair and denying him due process.[11] We are not persuaded. Federal habeas corpus relief lies when state court evidentiary rulings result in fundamental unfairness or abridge a specific constitutional right.[12] Such relief is in order only where the challenged evidence "is a crucial, critical, or highly significant factor in the context of the entire trial." [13] Carson concedes that Carlette's live testimony precisely matched her recorded statements; the latter thus constituted at worst cumulative evidence, admission of which does not warrant habeas corpus relief.[14] Similarly, Boyd's allegedly improper statements— with regard to which Carson had a full opportunity to cross-examine—clearly played no significant role in the trial, and therefore did not vitiate its fundamental fairness.[15] Carson's claims in this regard founder.[16]

### C. Ineffective Assistance of Counsel

Carson finally claims ineffective assistance of counsel in his attorney's failure to object when the prosecution offered the videotape into evidence and to raise the point on direct appeal. In *Strickland v. Washington*,[17] the Supreme Court held that in order to substantiate an ineffective assistance of counsel claim, the petitioner must establish both the attorney's deficient performance and prejudice to the defense flowing from that deficiency. Habeas corpus petitioners seeking relief on this basis bear the burden of demonstrating both of these elements.[18] To satisfy the first *Strickland* prong, a defendant must demonstrate attorney performance outside the wide range of reasonable professional assistance, and must overcome a presumption of adequacy.[19] After surmounting this first hurdle, the defendant must fur-

she told Carlette "it isn't your fault ... but he's sick and so we're going to see if we can get some help because he needs some help."

11. Carson also assigns as violative of due process the availability of the videotape to the jury during its deliberations. Carson neither objected when the state trial court permitted the jury to take the videotape into the deliberation room, nor raised this point on direct appeal or in any of his three state habeas corpus petitions. In the district court, Carson mentioned availability of the videotape to the jury only in asserting that he suffered prejudice as a result of a sixth amendment violation. He did not, however, assert that this availability itself denied him due process, and thus failed to bring his claim to the district court's attention. This failure precludes its consideration on appeal. *E.g., Johnson v. Puckett*, 930 F.2d 445 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 252, 116 L.Ed.2d 206 (1991); *United States v. Smith*, 915 F.2d 959 (5th Cir.1990).

12. *Johnson v. Blackburn*, 778 F.2d 1044, 1051 (5th Cir.1985).

13. *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir.), *cert. denied*, 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987); *Johnson*.

14. *Johnson; Corpus v. Estelle*, 571 F.2d 1378 (5th Cir.), *cert. denied*, 439 U.S. 957, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978).

15. In this connection, we note Carson's ability to identify only two prejudicial statements by Boyd during the interview. Review of the videotape indicates that Boyd made these statements only in reaction to Carlette's story of abuse. The statements thus had, at worst, minimal impact on the jury. *See Jernigan v. Collins*, 980 F.2d 292 (5th Cir.1992) [*cert. filed* 4/20/93] (prejudi-

cial testimony not ground for habeas corpus relief where given subject to cross-examination and insignificant in relation to other evidence presented by state).

16. Carson further suggests a due process violation in the application by the Texas Court of Criminal Appeals of a contemporaneous objection rule to deny him the benefit of its later-announced *Long* opinion. We cannot agree. Criminal defendants generally may preserve evidentiary rulings for appellate review only through contemporaneous objection. Tex. R.Crim.Evid. 103(a)(1). Texas law excuses contemporaneous objection where a defendant later asserts a "novel" constitutional claim. *Crispen* (*citing Mathews v. State*, 768 S.W.2d 731 (Tex. Crim.App.1989)). However, at the time of Carson's trial, Texas appellate courts had split over the validity of Tex.Code Crim.Proc. § 38.071. *Compare, e.g., Alexander v. State*, 692 S.W.2d 563 (Tex.App.1985) (upholding statute), *vacated*, 753 S.W.2d 401 (Tex.Crim.App.1988) *with Long v. State*, 694 S.W.2d 185 (Tex.App.1985) (holding statute invalid), *aff'd*, 742 S.W.2d 302 (Tex.Crim. App.1987). Potential constitutional infirmity in § 38.071 thus hardly presented a novel issue. Carson's claim of unfair surprise and prejudice in the application to him of the contemporaneous objection rule rings hollow.

17. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

18. *Martin v. Maggio*, 711 F.2d 1273 (5th Cir. 1983), *cert. denied*, 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984).

19. *Strickland*, 466 U.S. at 699, 104 S.Ct. at 2070.

ther demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [20]

 The district court here found that, due to a split in Texas intermediate appellate decisions concerning the validity of Tex.Code Crim.Proc. § 38.071 at the time of Carson's trial, failure to object at trial to use of the videotape and to raise the point on direct appeal did not constitute deficient performance. While we tend to agree with the district court that Carson did not receive ineffective assistance of counsel in violation of the sixth amendment, we prefer to rest our holding on Strickland's prejudice prong. Absence of an objection to the prosecution's introduction of the videotape neither deprived Carson of his sixth amendment confrontation rights nor brought evidence before the jury rendering his trial fundamentally unfair. Even assuming *arguendo* that Carson's attorney should have objected, we find no reasonable likelihood that such an objection would have changed the outcome of Carson's trial.[21] This claim lacks merit.

### Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

20. *Id.* at 694, 104 S.Ct. at 2068.

21. Although the failure to object potentially deprived Carson of the benefit of the Texas Court of Criminal Appeals opinion in *Long*, that deprivation does not, in view of the subsequent *Briggs* decision, amount to prejudice under *Strickland*. *Lockhart v. Fretwell*, —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Likewise, Carson's allegation concerning availability of the videotape to the jury during its deliberations does not satisfy Strickland's prejudice requirement. On appeal, Carson points to no evidence that the jury had access to video equipment or that it in fact re-

viewed the tape while deliberating. Notwithstanding his contrary assertion at trial, the state court record presents no evidence of such a review. However, even assuming that the jury reviewed the videotape during its deliberations, we reach an identical result. During the prosecution's case-in-chief, the jury watched the videotape. Further, its content closely matched that of Carlette's testimony on both direct and cross-examination. We cannot conclude that jury review of the videotape during deliberations, even if it occurred, would undermine our confidence in the verdict.