United States Court of Appeals,

Fifth Circuit.

No. 92-4236.

Audrey Eldon BAGLEY, Petitioner-Appellant,

v.

James A. COLLINS, Director of Texas Department of Criminal Justice, Institutional Division, Respondent-Appellee.

Sept. 15, 1993.

Appeal from the United States District Court for the Eastern District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Audrey Eldon Bagley, proceeding pro se, appeals the district court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2254 (1988). For the reasons set forth below, we affirm.

I

On September 21, 1982, Bagley committed aggravated rape. The victim had returned to her apartment after taking her daughter to school when Bagley—posing as an exterminator—appeared at her door. After entering the victim's apartment, Bagley donned rubber gloves and began spraying several rooms. Bagley then grabbed the victim from behind, put a knife to her throat, and told her "not to scream or I'll kill you." Bagley initially asked for money. He then tied the victim's hands with string, blindfolded her with several pairs of her child's shorts, and tied her child's jump rope around her mouth so that she could not talk. After raping her twice, Bagley tied the victim's feet together and departed. She struggled free and to the window, where she observed the license plate number of Bagley's vehicle.

Bagley pled guilty to aggravated rape. At the punishment phase of his trial, Bagley offered the testimony of a psychiatrist, Dr. Richard Coons, who testified that Bagley was a manic depressive with a neurotic condition toward women, a condition which required a substantial amount of psychotherapy. Dr. Coons further testified that Bagley genuinely wanted such treatment.

On cross-examination, Dr. Coons was asked the following:

Q. Now, the basic requirement of a person seeking psychiatric treatment is a willingness to admit there is a problem and a willingness to admit there is a problem and a willingness to work that problem out; is that correct?

A. It depends on what kind of problem it is.

Q. Well, Mr. Bagley's problem. Is that important to have his cooperation?

A. Yes.

Q. Would it affect your opinion on whether or not Mr. Bagley has that willingness that's necessary to get effective treatment if you were aware of whether or not he had been planning a jail break from the Jefferson County Jail?

MR. CARVER [defense counsel]: Your Honor, we would object. That's an extraneous matter. It's not relevant or germane to any issue before the jury.

THE COURT: Overruled.

Q. (BY MR. MILLER [prosecutor] ) If Mr. Bagley had written in a letter, "I think we could pull a jail break here in Beaumont if we played our cards right," and then went on to explain the security procedures at the jail and how they could be circumvented and this letter is dated January 14, 1985, would that show that he was unwilling to cooperate and correct his problems?

A. I'm not sure what that means. I haven't discussed it with him. I don't know whether that's more of the cry for help business that he's done many times before.

Q. If in the same letter he states, "If we didn't waste anybody they wouldn't look for us very long, but if we have to—

MR. CARVER: Your Honer, could we just have a running objection to the matters that he's going into as far as extraneous matters?

THE COURT: Yes, sir.

Q. If he expressed in a letter a willingness to kill the guards who were in charge of watching him to make his escape, would that show he's unwilling to work with society and in effect cure himself?

A. I don't know that I would interpret it that way or certainly that's not the only interpretation that can be placed on it.

Q. Is it consistent with that interpretation, however? Could it be consistent with that interpretation?

A. Yes.

Trial Transcript vol. 2, at 114-16. No evidentiary basis for the referenced letter exists in the record.

The jury sentenced Bagley to fifty years imprisonment. His conviction was affirmed by the

Texas Court of Appeals. *See Bagley v. State,* 708 S.W.2d 585 (Tex.App.—Beaumont 1986, *rev'd*

*en banc,* 776 S.W.2d 582 (Tex.Crim.App.1989)). The Texas Court of Criminal Appeals reversed on the issue of whether the trial court improperly allowed cross-examination regarding extraneous acts, and remanded to the Court of Appeals to determine whether the error was harmless. *See Bagley v. State,* 776 S.W.2d 582 (Tex.Crim.App.1989). On remand, the Texas Court of Appeals affirmed Bagley's sentence. After exhausting his state habeas remedies, Bagley filed a petition for habeas relief in the federal district court, pursuant to 28 U.S.C. § 2254 (1988). The district court denied the petition, and Bagley filed a timely notice of appeal.

## II

Bagley contends that the state trial court abused its discretion by allowing the prosecutor to refer to an alleged planned jail escape and Bagley's willingness to kill guards to effect the escape, during cross-examination of Dr. Coons. *See* Brief for Bagley at 2-8. Bagley argues that the prosecutor's remarks unfairly prejudiced his sentencing, thereby depriving him of Due Process under the Fourteenth Amendment.[1] *See id.* at 9-17. The government contends that the references were proper, and alternatively, that any error in not striking such references from the record would not be a proper ground for granting habeas relief. *See* Brief for Government at 11-16.

We need not decide whether the state trial court abused its discretion by allowing the remarks, as we think it clear that any error which may have occurred did not render Bagley's trial fundamentally unfair.[2] In the context of a prosecutor's remarks at trial, we must determine whether such remarks were "so prejudicial that ... the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment."[3] *Ortega v. McCotter,*

---

[1]Bagley apparently believes that the prosecutor's references to extraneous acts during cross-examination was an attempt to offer fake "other acts" evidence to show that Bagley acted in conformity with such acts. *See* Tex.R.Crim.Evid. 404(b) (adopting Fed.R.Evid. 404(b)).

[2]A petitioner for habeas corpus relief must "establish that the trial error was not merely an abuse of discretion, but was so grave as to amount to a denial of his constitutional right to substantive due process: that is, that the error made the trial fundamentally unfair." *Kirkpatrick v. Blackburn,* 777 F.2d 272, 279 (5th Cir.1985) (footnotes omitted)), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986).

[3]Because Bagley must show the harmfulness of the trial court's evidentiary ruling to establish a constitutional violation, we need not apply the harmless-error standard recently announced in *Brecht v. Abrahamson,* --- U.S. ----, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See id.* at ----,

808 F.2d 406, 410 (5th Cir.1987) (applying "fundamental fairness" test to claim of improper prosecutorial comments); *see also Thomas v. Lynaugh,* 812 F.2d 225, 230-31 (5th Cir.) (applying "fundamental fairness" standard to the state trial court's alleged abuse of discretion in allowing prosecutor to question witness on extraneous acts), *cert. denied,* 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987).

We are aware that a more specific, two-part test applies when determining whether the state's introduction of extraneous offenses implicates the Due Process Clause. *See Story v. Collins,* 920 F.2d 1247, 1254 (5th Cir.1991) (holding that extraneous offenses may be admitted into evidence without violating the due process clause if the government: (1) makes a strong showing that the defendant committed the offense; and (2) demonstrates that the extraneous offense is rationally connected with the offense charged). However, we believe *Story* is distinguishable from our facts. In our case, the prosecutor only made references to extraneous offenses during cross-examination; no testimony or other evidence tending to establish extraneous offenses was ever admitted by the trial court. Consequently, the trial error, if any, which occurred here is is more akin to the allowance of improper prosecutorial comments, rather than the admission of extraneous offense evidence.

In applying the "fundamental fairness" standard, we conclude that while the prosecutor's references had the potential to unfairly prejudice the jury, they were not a crucial, critical, highly significant factor in the jury's sentencing decision. At the time of the offense, the statutory penalty for a first-degree felony[4] was five to ninety-nine years or life imprisonment, and a maximum fine of $10,000. *See* Tex. Penal Code Ann. § 12.32 (Vernon 1974 & Supp.1993). The jury levied no fine, and assessed a mid-range term of fifty years imprisonment. Moreover, the jury considered substantial

---

113 S.Ct. at 1722 (holding "that the *Kotteakos [v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946) ] harmless-error standard applies in determining whether habeas relief must be granted because of *constitutional* error of the trial type" (emphasis added)); *see also Kirkpatrick,* 777 F.2d at 280 (stating that where a petitioner for habeas relief "must show the harmfulness of the error to establish the constitutional violation, subsequent application of a second harmless-error test would be superfluous").

[4]At the time of the offense, aggravated rape was defined as a first-degree felony. *See* Tex.Penal Code Ann. § 21.03 (Vernon 1974). Former § 21.03 has since been repealed. The offense of aggravated rape is now termed aggravated sexual assault, and remains a first-degree felony. *See* Tex.Penal Code Ann. § 22.021 (Vernon 1989).

evidence other than the prosecutor's references to extraneous acts—e.g., the premeditated nature of the offense[5] and the testimony of four witnesses regarding Bagley's bad reputation[6]—in determining Bagley's sentence. Lastly, to the extent that the jury could have considered the prosecutor's remarks to be evidence of extraneous acts, the state trial court gave a limiting instruction, stating that the jury could not consider such "evidence" for "any purpose unless you believe beyond a reasonable doubt that the defendant committed such other offenses, if any. Even then you may only consider the same in determining the identity of the defendant, or the issues of intent, motive, system, scheme, or design, in connection with this offense, and no other purpose."[7] Trial Transcript vol. 1, at 19; *see Zafiro v. United States,* --- U.S. ----, ----, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993) (stating that " "juries are presumed to follow their instructions' " (quoting *Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987)). We therefore hold that Bagley's trial was not rendered

---

[5]During closing argument, the prosecutor emphasized the following:

> When you start off with the facts of the crime—and its important to keep sight of some of the particular details of the facts—one is the premeditation of the crime. This isn't a crime of passion or sudden impulse. The defendant went to [the victim's] apartment. He found an apartment that was apparently occupied by just one person. He was prepared for what he's going to do. He had a disguise. His face was partially bandaged up. He was wearing a cap. He was acting the role of the apartment exterminator and even went through the process of allegedly exterminating the apartment in such a manner and so convincing that [the victim] saw nothing wrong, totally accepted him and opened her door. And you saw how cautious she was initially—looking through the peep hole, checking through the window making sure he was who she thought he was before letting him in the apartment. That's not a person who has got a problem that gets out of control at the spur of the moment. It's a person who plans a crime and goes through great detail to plan the crime.

> Trial Transcript vol. 2, at 153-54.

> The prosecutor's closing argument encompassed over 700 lines of the record, *see id.* at 152-85; only ten lines were devoted to Bagley's alleged escape plans and willingness to kill guards. *See id.* at 169.

[6]*See* Trial Transcript vol. 2, at 53-58.

[7]This instruction mirrors the language of Tex.R.Crim.Evid. 404(b), and is not contested on appeal.

fundamentally unfair by the prosecutor's remarks.[8]

III

For the assigned reasons, the district court's judgment denying the petition for habeas corpus relief is AFFIRMED.

---

[8]In addition to the alleged planned jail break and his willingness to kill guards, Bagley contends that the prosecutor improperly referred to two other extraneous acts—robbery (as Bagley's other motive) and an application for a false passport. *See* Brief for Bagley at 7. We hold that these references, even if improper, did not render Bagley's trial fundamentally unfair for the reasons set forth above.