PONCE DURON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-362-CR

ADALBERTO PONCE-DURON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In eight points, Appellant Adalberto Ponce-Duron appeals his capital murder conviction, claiming that 1) the trial court improperly granted the State’s motion to strike four potential jurors for cause, 2) the trial court erred in failing to suppress his videotaped statements, 3) business record evidence was improperly excluded, 4) the trial court improperly admitted extraneous evidence of gang activity and hearsay evidence, and 5) there was jury charge error.  We affirm.  

Factual and Procedural Background

On September 15, 2002, Stephanie Tacina and her boyfriend Jerry Jackson were at the Mack Park Apartments in Denton watching a football game with friends.  When Jackson and several other men got into a friend’s car to go buy beer, Tacina became angry and threw a beer bottle behind the car as they were leaving.  Jackson ran toward Tacina, swearing at her and shoving her into a brick wall, causing her to hit her head.  The men left to buy more beer and while they were gone another tenant at the apartments called 911 after noticing that Tacina was hurt.  Police and an ambulance arrived about ten minutes later.  Jackson was detained at the scene along with two other individuals, but only Jackson was arrested.  Appellant was at the scene and became upset when police arrested Jackson.

Ivan Holbert, who was visiting his girlfriend at the same apartments, witnessed Jackson’s arrest.  Holbert testified that after Jackson’s arrest he saw five people including Appellant get into a car; they told Holbert they were going to look for Tacina.  Holbert also said he overheard Appellant say that he was going to kill Tacina when he found her.

Security videotape obtained from the Denton Regional Medical Center, where Tacina had been taken for her possible head injury, showed Appellant leaving the hospital with a female wearing a green tube top.  The female was later identified as Tacina.  Tasia Hoffman, who was acquainted with some of the individuals in the car, testified that she saw the same people that Holbert testified about around 11:30 p.m. that same evening.  She also testified that Tacina was in the backseat of the car and that she had bruises, burns, and bloody hair.  Hoffman stated that Appellant and the others in the car drove to her house in an attempt to dump Tacina’s body there.  Hoffman said that Appellant appeared to be holding Tacina around the neck.  The group eventually left when Hoffman told them they could not leave the body at her house.  The following day, Amanda Doyle, one of the individuals who had been with Tacina in the car the previous night, asked Hoffman to go with her to see if Tacina was alive.  After Hoffman returned home from going with Doyle to see if Tacina was alive, she called her ex-boyfriend and told him where she had been.  Hoffman took her ex-boyfriend to where Tacina’s body had been left.  After going with Hoffman to see Tacina’s body, her ex-boyfriend called the police.

Appellant was arrested on September 21, 2002 in Rockingham County, North Carolina.  He was interviewed twice regarding the death of Tacina.  In the first videotaped statement, he was questioned by North Carolina detectives and in the second videotaped statement, he was questioned by Texas detectives.  In both videotapes, Appellant was read his Miranda rights, which he stated he understood.  He then proceeded to waive his right to remain silent and sign a waiver form.  In both videotaped statements, Appellant admits going to the hospital with four other people to find Tacina; hitting her numerous times; choking her with his belt; pulling her from the car by the belt around her neck; cutting her throat with scissors; and stabbing her in the abdomen three or four times.  He claimed that others in the group continued to yell at him to do these acts and that some of the individuals made threats against him and his family so he felt he had no choice.  Appellant also admitted to cleaning up the car that was used in the crime and burning numerous blood-covered items in the grill behind his house.

Conversely, at trial Appellant admitted going to the hospital, being present when evidence was destroyed the day after Tacina was killed, and confessing to the crime only because he feared for his and his family’s safety.  However, Appellant disputes his videotaped statements and testified that he did not kill or assault Tacina.  The jury found Appellant guilty of capital murder and the court assessed his sentence at life imprisonment.

Motion to Strike Jurors for Cause

In his first point, Appellant contends that the trial court denied him a jury of his peers by allowing the State to ask improper commitment questions during voir dire, and then granting the State’s motion to strike four potential jurors for cause.  Appellant complains that during the State’s voir dire, various hypotheticals involving capital murder were discussed.  Appellant objected to one hypothetical used by the State on the grounds that it amounted to improper commitment questions; failed to distinguish between murder and felony murder under the law; and misstated the law by using the word “could” instead of “should.”

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State,
 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). 

Appellant failed to timely object at the time when the State asked its questions, and only objected after a considerable amount of time had elapsed.  Appellant did not preserve error for appellate review.  We overrule Appellant’s first point. 

Motion to Suppress

In his second point, Appellant complains the trial court violated his right to remain silent by failing to suppress his videotaped statements.  Specifically, he claims that the videotaped confessions were involuntarily given because he had not slept much the night before, was fearful for his mother’s life, and did not understand his rights due to a head injury he received as a child.  The determination of whether a statement is voluntary is a mixed question of law and fact.  
Garcia v. State
, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000).  We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor and reviewing de novo the court's application of the law to the facts.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Involuntary confessions offend due process when they flow from the improper conduct of law enforcement officials.  
Colorado v. Connelly
, 479 U.S. 157, 167, 107 S. Ct. 515, 522 (1986); 
Gomes v. State
, 9 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  In determining whether a given confession was the result of improper official conduct, we review the totality of the circumstances, considering such factors as the length of detention and interrogation, the presence or absence of physical brutality, the location and hour of the questioning, and whether the defendant was permitted access to his family or an attorney.  
Gallegos v. Colorado
, 370 U.S. 49, 51-52, 82 S. Ct. 1209, 1212 (1962); 
Lane v. State
, 933 S.W.2d 504, 512 (Tex. Crim. App. 1996).

The record reflects Appellant took the stand during the suppression hearing and testified that he could barely read and write.  He also testified that he did not read the waiver form before he signed it.  Appellant testified that he had a hard time comprehending things because he had not slept and had an old head injury that made it difficult for him to understand.  However, during Appellant’s second videotaped statement, he indicated that he had eaten and slept prior to giving his statement.  Appellant indicated in his first videotaped interview with North Carolina detectives that he understood each right read to him and that he was willing to speak with the detectives.  He also stated that he did not want a lawyer “right now.”  Later in his second videotaped interview with Texas detectives, he indicated for the second time that he understood his rights and was willing to speak to the detectives.  Furthermore, during the suppression hearing Appellant testified that he spoke to the detectives voluntarily.  Using the appropriate standard of review, and based on the totality of the circumstances, we conclude the trial court did not err in denying Appellant’s motion to suppress.  Appellant’s second point is overruled. 

Evidentiary Rulings

Appellant complains in his sixth, seventh, and eighth points that the trial court erred when it ruled on three different evidentiary issues.  The standard of review for a trial court’s ruling under the rules of evidence is abuse of discretion.  
Sauceda v. State
, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court’s action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not warrant reversal of a trial court’s ruling on the admission or exclusion of evidence as long as the ruling is within the zone of reasonable disagreement.  
See Robbins v. State
, 88 S.W.3d 256, 259-60 (Tex. Crim. App. 2002).

In his sixth point, Appellant argues the trial court violated Rule 107 by excluding portions of a business record.  
See
 
Tex. R. Evid
. 107.  During the State’s case, a document from the county jail regarding Appellant’s desire to speak to a counselor was admitted for impeachment purposes.  Appellant argues that the entire document should have been admitted so that the jury was not left with an improper impression.  Appellant points out that the partial admission of the document mistakenly infers that Appellant was seeking assistance for his “problems” while in jail, and that those “problems” were related to him being guilty.  Furthermore, Appellant contends that the trial court’s refusal to admit the entire document violated the evidentiary rule of “optional completeness” and his constitutional right to offer evidence in his own behalf.

“Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party.”  
West v. State
, 121 S.W.3d 95, 103 (Tex. App.—Fort Worth 2003, pet. ref'd).  “The so-called rule of optional completeness takes effect when other evidence has already been introduced but is incomplete and misleading.”  
Jones v. State
, 963 S.W.2d 177, 182 (Tex. App.—Fort Worth 1998, pet. ref'd). 

The record reflects that the document from the jail was admitted for impeachment purposes only and not for the contents of the writing.  The State contends that Appellant claimed that he could not read or write and this document impeached his testimony.  Furthermore, the trial judge instructed the jury that the document was to be considered for the limited purpose of impeachment.  In light of the purpose for which the document was admitted, and the court’s instruction to the jury, we hold that asking a question for impeachment purposes does not render the entire document admissible under the rule of “optional completeness.”  
See Sauceda
, 129 S.W.3d at 117.  We overrule Appellant’s sixth point.  

In his seventh point, Appellant claims the trial court improperly admitted  extraneous evidence of gang activity of Appellant and that the evidence was inflammatory and should have been excluded under Rule 404(b).  
See
 
Tex. R
. 
Evid
. 404(b).  Holbert, a witness who was present the night of Jackson’s arrest, was allowed to testify during trial that he overheard Appellant state, “I’ve got this on my set, H.L.V.; when I find her, I’m going to kill her.”  The witness then testified that H.L.V. meant high-life villain.  The State points out that the word gang was never used in the witness’ testimony, but does not dispute that the jury could have inferred a gang association.  

Evidence is admissible under Rule 404(b) if it is relevant and not offered for the purpose of proving action in conformity therewith on a particular occasion, but is offered for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  
Tex. R. Evid
. 404(b).  In this case, the State argues that Appellant’s statement made on the night of the incident conflicts with his defensive theory that the group members were merely going to beat up the victim and not kill her, and is relevant because it proves that he had intent and knowledge.  Furthermore, the State argues it was not hearsay since it was an admission by a party-opponent.  
See
 
Tex. R. Evid
. 801(e)(2)(A); 
Roy v. State
, 997 S.W.2d 863, 866 (Tex. App.—Fort Worth 1999, pet. ref’d).  We agree.  Appellant’s seventh point is overruled.

In his eighth point, Appellant argues that the trial court erred by allowing inadmissible hearsay evidence, which violated Appellant’s constitutional right to confrontation.  Specifically, he complains about two statements made by members of the group he was with on the night of Tacina’s murder.  Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  
Tex. R. Evid
. 801(d).  The admission of hearsay evidence against a criminal defendant implicates the Confrontation Clause of the Sixth Amendment because the defendant is not afforded the opportunity to confront the out-of-court declarant.  
U.S. Const
. amend. VI.  The central issue is whether the statements made by other members of the group are admissible against the defendant.  Therefore, the first issue we must address is not whether the statements should have been admitted under the rules of evidence but whether the admission of the statements violated Appellant’s Sixth Amendment right to confrontation.  In deciding this constitutional issue, we review the trial court’s ruling de novo.  
See Muttoni v. State
, 25 S.W.3d 300, 304 (Tex. App.—Austin 2000, no pet.).

At the time of Appellant’s trial, a Sixth Amendment challenge to the admissibility of an out-of-court statement against the accused was governed by  
Ohio v. Roberts
.  448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980), 
overruled in part by Crawford v. Washington
, 124 S. Ct. 1354, 1369 (2004).  In 
Roberts
, to avoid a violation of the Confrontation Clause, hearsay must fall within a firmly rooted hearsay exception or must contain particularized guarantees of trustworthiness such that cross examination would probably add little, if anything, to the reliability of the evidence.  
Id
.  This standard was applied in several subsequent noteworthy decisions.  
See
 
Lilly v. Virginia
, 527 U.S. 116,  119 S. Ct. 1887 (1999) (holding co-defendant’s confession incriminating defendant was not within a firmly rooted exception to the hearsay rule under 
Roberts
 standard); 
see also Idaho v. Wright
, 497 U.S. 805, 110 S. Ct. 3139 (1990) (holding evidence must be “so trustworthy that adversarial testing would add little to its reliability”).  The Supreme Court overruled 
Roberts
 and set out a new test prohibiting the admission of “testimonial” statements when the witness is unavailable unless the defendant had the opportunity for cross-examination.  
Crawford
, 124 S. Ct. at 1369.  Now, different analyses apply to nontestimonial hearsay and testimonial hearsay.  
See
 
id
. at 1374.  The court held that 

[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers’ design to afford the States flexibility in their development of hearsay law—as does 
Roberts
, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.  Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination.

Id.
; 
see Wilson v. State
, No. 02-03-490-CR, 2004 WL 2484835, at *2 (Tex. App.—Fort Worth Nov. 4, 2004, no pet. h.); 
see
 
also Barela v. State
, No. 08-02-00492-CR, 2004 WL 2192604, at *6 (Tex. App.—El Paso Sept. 30, 2004, no pet. h.) (not designated for publication).  According to 
Crawford
, the use of the 
Roberts
 test has caused rationale of the Supreme Court’s cases to depart from the original intent of the framers of the Constitution.  124 S. Ct. at 1359-63.  
Crawford
 declares that the 
Roberts
 test is too broad because it applies the same analysis whether the out-of-court statement is testimonial or not and too narrow because it admits ex parte testimonial statements “upon a mere finding of reliability.”  
Id
. at 1369.  
Crawford
 contends that the 
Roberts
 test is inappropriate not only because its results were unpredictable, but also because its application allowed testimony the Confrontation Clause clearly meant to exclude. 
 Id
. at 1371-72.

The threshold question imposed by 
Crawford
 is whether the proffered out-of-court statement is “testimonial” in nature.  
Id
. at 1364.  Although the Supreme Court declined to define “testimonial,” it identified certain categories that fall under the heading of testimonial statements, specifically, “ex parte in-court testimony or its functional equivalent, . . . extrajudicial statements contained in formalized testimonial materials, . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.”  
Id
.  According to 
Crawford
, these types of statements bear the closest kinship to the abuses at which the Confrontation Clause was directed.  
Id
.  If the out-of-court statement is determined to be testimonial in nature, the Sixth Amendment requires that the witness be unavailable and that the defendant had a prior opportunity for cross-examination.  
Id.
 at 1374. 

We turn to the statements made by the members of the group on the night of the incident and address whether those statements are testimonial in nature.  The first statement Appellant objected to was a witness’ testimony that someone in Appellant’s group on the night of the murder said they were going to the hospital.  The witness did not identify the speaker, but testified it was one of the five individuals who left in the car.  Because the witness could not identify the declarant of the statement and the defendant could not cross-examine the individual, 
Crawford
 applies if the statement is testimonial.  
See id
.  Therefore, the first issue to determine is whether the statement is testimonial in nature.  We conclude that this statement is not testimonial and that 
Crawford 
does not apply. 

A number of factors support this determination.  First, Appellant by his own admission went to the hospital with the group of individuals who made this statement.  Second, the statement was not made in the context of any police investigation or interrogation. Third, the statement was not made to any police officer or court official, but instead was made in the course of conversation.  Considering these facts set out in the record, we conclude the statement made by a group member on the night of the incident was not testimonial in nature and therefore did not trigger the cross-examination requirement of the Confrontation Clause as interpreted by the court in 
Crawford
. 
 See id
.

However, because we conclude the statement is nontestimonial in nature, we must determine if the statement falls within any hearsay exception.  
See
 
Tex. R. Evid
. 803(2).  Appellant contends that the trial court erred in allowing inadmissible hearsay.  Whether an out-of-court statement is admissible under an exception to the general hearsay exclusion rule is a matter within the trial court’s discretion.  
Zuliani v. State
, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  We review a trial court’s ruling admitting testimony under an abuse of discretion standard.  
Salazar v. State
, 38 S.W.3d 141, 153-54 (Tex. Crim. App.), 
cert. denied
, 534 U.S. 855 (2001).  Therefore, we will reverse only if the trial judge’s decision was “so clearly wrong as to lie outside the zone within which reasonable persons might disagree.”  
See Cantu v. State
, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  The appellate court’s role is limited to determining whether the record supports the trial court’s ruling.  
Coffin v. State
, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).  

 The Texas Rules of Evidence define hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”  
Tex. R. Evid
. 801(d).  The rules of evidence also provide categories not included as hearsay.  
Tex. R. Evid
. 801(e).  The State argues that the statement cannot be classified as hearsay.  According to Rule 801 a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy, is not hearsay.  
Tex. R. Evid. 
 801(e)(2)(E).  The co-conspirator exception to the hearsay rule is not limited to prosecutions for conspiracy, but is a rule of evidence applicable to any offense.  
Roy v. State
, 608 S.W.2d 645, 651 (Tex. Crim. App. [Panel Op.] 1980).  Also under Rule 801, testimony classified as an adoptive admission is not hearsay.  
See Paredes v. State
, 129 S.W.3d 530, 534 (Tex. Crim. App. 2004) (statements made by co-conspirators in defendant’s presence were admissible as adoptive admissions where defendant, by his actions and responses, showed agreement with the statement).  The statement Appellant complains of was made in his presence and by one of the individuals in the group, all of whom went to the hospital to locate Tacina.  By Appellants own admission he went to the hospital with the other members in the group in an attempt to find Tacina.
  We hold that the challenged statement does not fall within the parameters of hearsay.  

 The second statement objected to was Holbert’s testimony that he told the group that night “to leave Stephanie alone because it’s not her fault Jerry went to jail.”  When Appellant objected to the testimony the State responded that the statement was not offered for the truth of the matter asserted, but simply that it was said.  Appellant’s objection was overruled and the court gave the jury a limiting instruction regarding the statement.  An extrajudicial statement or writing that is offered to show what was said, rather than for the truth of the matter stated, does not constitute hearsay.  
Dinkins v. State
, 894 S.W.2d 330, 347 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995).   Therefore, since the court recognized that the statement was not offered for the truth of the matter asserted and gave a limiting instruction to the jury, the statement is not hearsay within the definition of Rule 801.  Furthermore, the 
Crawford
 analysis applies to out-of-court testimonial statements by a declarant who is not available at trial.  Here the Confrontation Clause was not implicated since the declarant of the statement was the witness who was testifying, and Appellant was afforded the opportunity to confront the out-of-court declarant by cross examination.  
See Carson v. Collins
, 993 F.2d 461, 464 (5th Cir.), 
cert. denied
, 510 U.S. 897 (1993).  We overrule Appellant’s eighth point. 

Jury Instructions

In his third point, Appellant argues the trial court erred by including a “law of parties” instruction in the jury charge.  At trial, Appellant timely objected regarding the instruction and argued that no evidence or testimony was presented at trial to support the inclusion of such an instruction.  The trial court overruled the objection.

An instruction on the law of parties may be given whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties. 
 Ladd v. State
, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999).  A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.  
Tex. Penal Code Ann.
 § 7.01(a) (Vernon 2003).  Moreover, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  
Id
. § 7.02(a)(2).  In determining whether a defendant was a party, the trial court may look to events before, during, and after the commission of the crime.  
Goff v. State
, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1171 (1997).  Furthermore, if the evidence clearly supports the defendant’s guilt as a principal, error, if any, is harmless.  
Ladd
, 3 S.W.3d at 564-65.

In the present case, the evidence was sufficient to support a jury verdict that Appellant was criminally responsible under the law of parties.  Appellant admitted that he went to the hospital with the other group members and he went there with the intent to lure Tacina into the car.  Holbert testified at trial that on the night Tacina was killed, Appellant said he was going to kill Tacina when he found her.  Finally, Hoffman testified that she saw Appellant in a car with the victim and he appeared to be restraining her.  The jury could infer from this evidence that Appellant acted with the intent to promote or assist the commission of the murder, and solicited, encouraged, directed, aided, or attempted to aid the members of the group in killing Tacina.  
See
 
Tex. Penal Code Ann
. § 7.02(a)(2).  Additionally, in view of the trial testimony and Appellant’s videotaped confessions, there was sufficient evidence for the jury to find Appellant guilty as a principal.  We overrule Appellant’s third point.  

In his fourth point, Appellant complains the trial court erred when it failed to instruct the jury on renunciation as an affirmative defense.  At trial, Appellant  requested an instruction under section 15.04(b),
(footnote: 2) which allows an affirmative defense to prosecution under section 15.02.
(footnote: 3)  Section 15.02 deals with the crime of criminal conspiracy.  During the trial Appellant objected to the jury instruction by stating, “If the court is going to allow the State an application paragraph on conspiracy that is not in the indictment or that he’s been charged with, then we’re going to request an instruction under Section 15.04(b), as an affirmative defense to conspiracy, the renunciation defense.”

A review of the record finds that the jury charge does not contain any of the conspiracy language contained in section 7.02(b),
(footnote: 4) which Appellant complains of, but instead includes the language of section 7.02(a),
(footnote: 5) which is unrelated to the conspiracy objection Appellant made at trial. 

Appellant’s point on appeal is not consistent with his trial objection.  Appellant complains that he was entitled to a jury charge of renunciation under 15.04(a),
(footnote: 6) which allows an affirmative defense under section 15.01,
(footnote: 7) criminal attempt.  Neither the indictment nor the jury charge reference the crime of criminal attempt under this section.  In fact, Appellant is charged in the indictment with capital murder.  
See id
. § 19.03(a)(2) (Vernon Supp. 2004-05). Therefore, Appellant’s point has not been preserved for review.  We overrule Appellant’s fourth point.

In his fifth point, Appellant contends that the trial court erred by giving a definition of reasonable doubt in the jury instruction.  Appellant specifically complains of the following portion of the trial court’s jury instruction:  “It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution’s proof excludes all ‘reasonable doubt’ concerning the defendant’s guilt.”  Appellant argues that this instruction violates 
Paulson v. State
, which states it is better practice not to provide a definition of reasonable doubt.  28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

This court has reviewed this identical issue several times, in 
Vosberg v. State 
and its progeny, and ruled against Appellant’s position.  80 S.W.3d 320, 324 (Tex. App.—Fort Worth 2002, pet. ref’d); 
see Best v. State
, 118 S.W.3d 857, 865 (Tex. App.—Fort Worth 2003, no pet.) (no error where same language included over objection); 
see also Blackburn v. State
, No. 2-02-158-CR, 2003 WL 22311253, at *1 (Tex. App.—Fort Worth Oct. 9, 2003, pet. ref’d) (not designated for publication) (same); 
Minor v. State
, 91 S.W.3d 824, 827-29 (Tex. App.—Fort Worth 2002, pet. ref’d) (same).  We reaffirm our decision in 
Vosberg
.  Point five is overruled. 

Conclusion

Having overruled Appellant’s eight points on appeal, we affirm the trial court’s judgment. 

DIXON W. HOLMAN

JUSTICE

PANEL F: HOLMAN, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  November 12, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Tex. Penal Code Ann.
 § 15.04(b) (Vernon 2003).

3:
Id
. § 15.02. 

4:
Id
. § 7.02(b).  

5:
Id
. § 7.02(a).

6:
Id
. § 15.04(a).

7:
Id
. § 15.01.